CHITTENDEN Burdict and Hurlburt *vs.* Harvey Murray and Ezbon
January,
1830.                                    Sanford.

> One who has a special property in a chattel may maintain trespass against the person who deprives him of the possession, and recover according to his interest.
>
> Where a parcel of undressed skins were delivered to a morocco manufacturer to be manufactured into morocco, and, while the skins were in an unfinished state, the owners turned them out to their creditor, who caused them to be attached and carried away,—it was held that the bailee might have legally detained them until the price stipulated for finishing them was paid, and that he might maintain trespass against the persons taking them.
>
> But it would have been otherwise, if a particular time or mode of payment for dressing the skins had been agreed on, or, if, at the time of taking them, the bailors had offered and agreed to allow the bailee the full price for dressing them out of moneys actually in the bailee's hands.

This was an action of *trespass* for taking and carrying away a quantity of sheep skins and goat skins. Plea, *not guilty*. At the trial in the county court, Turner, J., presiding, it appeared in evidence, that a contract had been made between Allen Murray and Warren Murray and the plaintiffs, by which the Murrays were to furnish four thousand skins annually for three years, to be tanned and dressed into morocco by the plaintiffs, and were to pay the plaintiffs therefor twenty seven and a half cents for each skin. The Murrays were to furnish the skins from time to time as the plaintiffs might want them, and the plaintiffs were to dress and deliver them at their shop to the Murrays, finished in a merchantable condition, for the price above mentioned. Under this contract the skins in question had been delivered to the plaintiffs; and after they had been partly dressed, and were in an unfinished state, the said Allen and Warren Murray turned them out to the defendant, *Harvey Murray*, a creditor, who caused them to be attached and taken away, on a writ of attachment against said Allen and Warren. The plaintiffs contended they had a *lien* on said skins for the labor already bestowed in dressing them, and other skins delivered on said contract, and also for the labor they were thereafter to bestow in completing them. It *appeared that* the said Allen and Warren Murray, after the date of said contract, from time to time delivered skins to the plaintiffs to be dressed, and from time to time paid them money, and delivered them property, in payment for dressing the same; that the plaintiffs from time to time delivered skins dressed to the said Allen and Warren Murray as they called for them, without reference to the state of their accounts; that the plaintiffs frequently sold skins and charged themselves with them, and at other times delivered skins to the order of said Allen and Warren; that in pursuance of an

understanding of the said Allen and Warren and the plaintiffs—the plaintiffs kept a memorandum book in which they entered the skins received by them on said contract—the skins delivered back to the said Allen and Warren and to others by their order, also the several payments made by them for dressing, and also the number of skins dressed. The defendants offered said memorandum book and other evidence tending to prove that previous to the taking complained of in the plaintiffs' declaration, the said Allen and Warren had paid the plaintiffs all that was due them for the labour bestowed in dressing the skins delivered in pursuance of said contract, and all they would be entitled to receive if they had completed the dressing of those described in the plaintiffs' declaration and taken by the defendants. Which evidence was objected to by the plaintiffs, and excluded by the court—on the ground that the accounts of the said Allen and Warren could not be settled in this action of trespass. And the court charged the jury that they had nothing to do with the said accounts ; that the determination of this suit did not depend on the state of the accounts ; that if it should be found on settlement that Allen and Warren Murray had paid the plaintiffs for dressing all the skins, finished and unfinished, agreeably to contract, as the defendants alleged and contracted—this would furnish the defendants with no defence to this suit ; that the said Allen and Warren had no right, and could convey no right, to the defendants to take the skins without the plaintiffs' consent ; and that if they found that the skins were taken by the defendants, on an attachment, out of the plaintiffs' possession, without their consent, and against their will, and that that suit was afterwards abandoned, to find the defendants guilty, and for the plaintiffs to recover the amount of the dressing ; which the jury accordingly did.

The defendants took exceptions to the decision and charge of the court, on which the cause was removed to this Court, and was now heard on a motion for a new trial.

*Thompson, for the defendants.*—1. The defendants contend, that where work is done by a manufacturer, &c. upon property, in pursuance of a *special contract*, there is no *lien.*—*Bul. N. P.* 45 ; 2 *Esp. N. P.* 197 ; 5 *Bac. Abr.* 271 ; 2 *Esp. N. P.* 347 ; 2 *Dane*, 263, 264.

The law gives to the tailor, common carrier, in-keeper, &c. a *lien* on the goods, because they are *compelled* to perform certain services, independent of any particular agreement.—5 *Bac.* 268

*Margin note:* CHITTENDEN *January,* 1830. Burdict et al. *vs.* Murray et al.

CHITTENDEN
January
1830.

Burdict et al.
vs.
Murray et al.

9. The law attaches this imperative obligation to those engag-ed in certain occupations from their close connection with the *public* convenience ; and, therefore, it attaches to them this pe-culiar and special security for payment; and mercantile usage and policy have further extended it, as in the case of factors, bankers, &c. But the plaintiffs do not stand in this relation to the public. The *tanner* is a manufacturer, not for the public, but for himself, and if he manufactures sheep skins into *goat skin mo-rocco, for others*, it is, as in this case, in virtue of a special con-tract; and if, as in this case, he makes such special contract, without reserving the right of *lien*, he waives it.—2 *Esp. N. P.* 195; 4 *Burr.* 2221 ; 2 *Esp. N. P.* 191.

2. But, if the special contract, as well as the nature of the plaintiffs' business, be not totally inconsistent with the idea of a *lien*, in this case—still the course of dealings between the plaintiffs and Allen and Warren Murray, disclosed by the case, is repugnant to it, and shows a waiver of any such right on the part of the plaintiffs. Allen and Warren Murray, from time to time, delivered plaintiffs skins—from time to time paid them money, and property for the dressing—and the plaintiffs delivered skins to the Murrays or their order—sold skins frequently ; and all this without any claim of *lien*, without any reference to the state of their accounts ; but, on the contrary, make their whole transactions, in reference to the skins, a matter of account. Could a creditor of the Murrays, knowing this, infer a *lien ?* Could he suspect it ?

3. The defendants contend, that whether there was a lien or not in the plaintiffs, the action of trespass will not lie in this case. The case expressly states that the skins were turned out to the defendants by Allen and Warren Murray, the general owners. And being thus authorized by the general owners to take them, it is self evident, they acquired the same right to the skins which *they* had, and stood in the same relation to the property. If the plaintiffs could not maintain trespass against the general owners, it is clear they cannot against the defendants.—5 *Bacon's Ab.* 185. On the supposition that there was a lien in the plaintiffs, then a a special property in the plaintiffs to the amount of the lien, and a general property in Allen and Warren Murray, co-existed ; and this joint interest resembles that of two tenants in common, or joint tenants, to the same chattel ; and in neither of these cas-es can trespass be maintained.—*Co. Lit.* 323—200 *a; Cowp.* 450 ; 1 *T. Rep.* 638. The general owner may be liable, in some collateral way, to another, for taking away, or depriving that other

of the use of his property ; but it is absurd to say he can be aCHITTENDEN
trespasser.

January
1830.

Burdick et al.
vs.
Murray et al.

4. The defendants contend that the court erred in charging the jury, that the payment of what was due to the plaintiffs, for the skins finished, and what they would be entitled to recover if they had completed the dressing of the unfinished skins, would furnish the defendants with no defence to this suit. Admitting a *lien*, still a lien is an incident and consequence of a *debt* ; when the debt is discharged, the *lien* is gone. Could it possibly be pretended, that the plaintiffs could withhold the skins from the general owners, after the payment of their charges for tanning? and if not, on what principle could they withhold them from their creditor ?

5. The defendants contend that the court erred in excluding the memorandum book. On general principles it is impossible to perceive, why this book should be considered evidence of an improper *kind* to prove the discharge of what was due to the plaintiffs. Being kept by plantiffs themselves, it is not for *them* to object to it. Suppose they had tanned 100 skins, would not their *admission* of the receipt of $27,50 be proper evidence? and if their *verbal* admission, would be proper evidence, why not their *admissions on paper* ? Besides, the case shows that this book was kept in consequence of an " *understanding*" between the plaintiffs and Allen and Warren Murray, and therefore it was the very mode of proof, fixed upon by plaintiffs themselves, by which to decide the question of indebtedness. But, if the court were right in excluding the book, still the case shows they excluded " other evidence," to this point.

*Bailey and Marsh, for the plaintiffs.*—It is contended by the plaintiffs, that Allen and Warren Murray had no authority to intermeddle with the skins, or in any manner to controul them, and, therefore, could confer no authority upon others. A. and W. Murray could not give a right of possession to the defendants, unless they themselves had such a right, as against the plaintiffs. But they could have no such right as against the plaintiffs, who were bailees of the skins for a certain specific purpose, (the dressing,) not yet completed, and for a reward. A. and W. Murray could not have maintained trespass against a stranger for taking the skins.—See *Gordon* vs. *Harper*, 7 *T. R.* 9. The bailee of a chattel coupled with an interest, for a time certain, (and, by parity of reasoning, a bailee for a specific purpose not yet accomplished,)

CHITTENDEN
January,
1830.

Burdick et al.
vs.
Murray et al.

may maintain trespass against the bailor, for taking it away before the time has expired.—*Hammond's Nisi Prius*, 249 ; 1 *Chit. Pl.* 169.    To this purpose also is the case of *Cowing* vs. *Snow*, 11 *Mass. Rep.* 415.    So tenant for years may maintain trespass *quare clausum* against his landlord.—*6 Bac. Abr. title trespass*, 591, 592.    And though this distinction is made between realty and personalty, that in the latter species of property, the general property draws to it the possession, but not in the former ; yet this principle applies as to chattels only where there is no conflicting lawful claim to the possession.    The plaintiffs, having taken the skins under a contract to dress them for a reward, had a beneficial interest in them, a special property, of which they could not be divested without their own consent.

The defendants contend that they ought to have been permitted to show the state of the account between A. and W. Murray and the plaintiffs, and that if nothing was found to be due from them to the plaintiffs, Allen and Warren Murray would have a right to controul and possess the skins.    It is to be observed that the offer of the defendants went no further than to show that upon a general settlement of the account relating to the skins between plaintiffs and A. and W. Murray, nothing would be due to the plaintiffs even after the dressing of the then unfinished skins was completed : but the defendants did not offer to prove that any thing had been paid to apply specifically upon the dressing of the particular skins in question.    There being no evidence, that A. and W. Murray had furnished *more* than the four thousand per year, the skins in question are to be considered as a part of the supply for the then current year.    If, in truth, A. and W. Murray had paid the plaintiffs any thing more than was due to them for dressing such skins as had been finished, the plaintiffs had a right to apply the balance, not merely upon the dressing of the skins then in hand, but also upon the labour thereafter to be bestowed in dressing the skins, which A. and W. Murray were yet bound to furnish.    It is only upon the ground that A. and W. Murray might *rescind the contract* at any time when they were not indebted to the plaintiffs, that they could have any authority to intermeddle with the skins.    No such right is given to them by the contract.    The right to rescind must be mutual ; and it cannot be contended, that the plaintiffs could have lawfully refused to complete the contract, by dressing all the skins furnished them by A. and W. Murray, not exceeding the number of four thousand per year.    A. and W. Murray could not have a right to take possession of the skins,

unless the plaintiffs had also a right to redeliver them, and refuse to fin-ish them. For these reasons, the evidence concerning the accounts could not be heard in this action, and was, therefore, properly rejected.

CHITTENDEN
*January*,
1830.

Burdick et al.
*vs.*
Murray etal.

PRENTISS, Ch. J., delivered the opinion of the Court.—It is the better opinion, that he who has a special property in goods, may have an action of trespass against him who has the general property, and upon the evidence the damage shall be mitigated. Thus, a bailee of a chattel for a certain time, coupled with an interest, may support the action against the bailor for *taking it away* before the time.—*(*1 *Chit. Pl.* 170.*)* There is no doubt, therefore, but that the plaintiffs in the case before us, if they had a special property in the skins, were entitled to maintain this action, and recover according to their interest, although the skins were turned out to the defendants, on the writ of attachment, by Allen and Warren Murray, the owners.

The plaintiffs, under the contract with the Murrays, were bailees having an interest, and had a right to retain the skins for the purpose for which they were bailed to them. Until the skins were dressed and made into morocco, the plaintiffs were entitled to the possession of them ; and even then they would have a lien upon the skins for the price agreed to be paid for their labor upon them. A workman who has bestowed his labour upon a chattel, has a lien for the remuneration due to him, whether the amount was fixed by the express agreement of the parties or not ; though it is otherwise, if, by the bargain, a future day of payment was agreed upon, for then the detention of the chattel would be inconsistent with the terms of the contract.—*( Chase* vs. *Westmore,* 5 *Maule and Selw.* 180.*)* Here there was no particular time or mode of payment agreed upon, and if the plaintiffs had completed the manufacture of the skins according to the agreement, they would have had an unquestionable right to detain them until the price was paid, unless they had already in their hands a balance sufficient to pay the price. But the skins were in an unfinished ed state, and the plaintiffs had a right, under the contract, to retain them to earn the price. If at the time of taking the skins, the Murrays had offered and agreed to allow the plaintiffs the full price stipulated to be paid for finishing them, out of monies actually in the plaintiffs' hands sufficient to pay the price, it might have been a good defence. But as no such offer appears to have been made, the evidence proposed by the defendants could not avail them. Judgement affirmed.