## Case No. 12,703.

### SHANKLAND v. WASHINGTON.

[3 Cranch, C. C. 328.] [1]

Circuit Court, District of Columbia. May, 1828.[2]

LOTTERIES — PART TICKET — RIGHTS OF HOLDER.

The corporation of Washington is not liable to the holder of a sub-ticket, or part of a ticket, for any part of the prize drawn by the ticket. It is only liable to the holder of the whole ticket.

[Cited in McCue v. Washington, Case No. 8,735.]

[This was an action by Alexander B. Shankland against the corporation of Washington, to recover one half of a prize drawn by a certain lottery ticket.]

CRANCH, Chief Judge (THRUSTON, Circuit Judge, not sitting). This is an action of assumpsit for money had and received, to recover one half of the amount of the prize of $25,000, drawn by ticket No. 5591 in the 5th class of the Washington lottery. The plaintiff produced the same evidence which was produced in the case of Clark v. Corporation of Washington, 12 Wheat. [25 U. S.] 40, except the ticket which drew the prize; which ticket in the present case, namely, No. 5591, was, after the drawing, given up to the managers as a cancelled prize ticket by D. Gillespie, who received from the managers, in consideration thereof, an equivalent in notes of purchasers of tickets in the lottery, which had been deposited with the managers by Gillespie as stated in Mr. Webb's deposition. The plaintiff further proved by the testimony of the same Mr. Webb, that, as clerk of the said D. Gillespie, he was in the habit of selling whole tickets, half tickets, and quarter tickets, in the 5th class of the said lottery, and that as such clerk, he sold to the plaintiff one half of the ticket No. 5591. That the said ticket No. 5591 was duly signed by the managers. The defendants waived the necessity of producing upon the trial the original ticket No. 5591, and agreed that it is in their possession, and that its form, excepting its number, is like that produced in Clark's case. Mr. Webb, after he had sold one half of the ticket, No. 5591, to the plaintiff, issued a sub-ticket in these words and figures, namely: "National Lottery—5th class. No. 5591. This ticket will entitle the possess-

or to one half of such prize as may be drawn to its number, if demanded within twelve months after the completion of the drawing, subject to a deduction of fifteen per cent.; payable sixty days after the drawing is finished. Washington City, Feb. 1, 1821. ½ 5591. D. Gillespie, per J. F. Webb." It did not contain the names of the managers, nor any allusion to them; nor any evidence that, in making such sub-ticket, D. Gillespie acted as the agent of the managers, or of the corporation. It was further proved that the ticket No. 5591 drew a prize of $25,000, on the 33d day's drawing; that payment of half of the prize was, in due time, demanded at the office of the mayor of Washington, who was absent, and of the register of the city, and of the managers, all of whom refused payment. That Mr. Webb sent to the plaintiff a list of the 33d day's drawing. It was agreed that the printed copy of the scheme, given in evidence, is a true copy of the real scheme by which the lottery was drawn; and that the drawing was commenced on the 27th November, 1821, and was completed on the 2d of January, 1823. That the court shall decide what of the said evidence is admissible, and shall judge upon such as they shall decide to be admissible as if it were a demurrer to evidence, and draw all the inferences of fact which a jury could draw, and shall say what sum the plaintiff shall recover, if entitled to recover upon such evidence, and judgment shall be entered accordingly; and if the court should be of opinion that the plaintiff is not entitled to recover, then judgment shall be entered for the defendants.

Upon this evidence, supposing it all to be admissible, the court is of opinion that the plaintiff is not entitled to recover. By the by-law of 22d May, 1821, all the lottery tickets were to be signed by the president of the managers. This sub-ticket was not so signed. It purported to be the private agreement of D. Gillespie to pay to the holder thereof one-half of the prize which should be drawn by the ticket No. 5591, which Gillespie retained in his own possession. It did not bear on its face the names of the managers, nor in any manner allude to them. The advertisements, which were signed by the managers, did not authorize the sale of half tickets; nor is there any evidence that they authorized Gillespie to multiply the responsibilities of the corporation to an indefinite extent by dividing the tickets. By requiring that all the tickets should be signed by the president of the managers, they clearly intended to limit their responsibility to such tickets only as should be so signed. We think that D. Gillespie had no better right than any other person who purchased a whole ticket, to sell a share in it, and thereby make the corporation liable to such shareholder. It does not appear that the managers, at the ti  they received the ticket No. 5591 from Gillespie, as a cancelled prize-ticket, knew that he had sold a share of the prize to the plaintiff, or

[1] [Reported by Hon. William Cranch, Chief Judge.]

[2] [Affirmed in 5 Pet. (30 U. S.) 390.]

to any other person; and it is to be inferred that they gave up to Gillespie, in exchange for this prize, its full value in other securities which they held. They may be considered, therefore, as having paid this prize to the holder of the ticket, without notice of the plaintiff's interest therein; and therefore the plaintiff has no right to recover in this action for money had and received, which is in the nature of a suit in equity.

Upon the whole, therefore, we think that no contract, express or implied, is made out by the evidence, which will support this action.

Affirmed by the supreme court. 5 Pet. [30 U. S.] 390.