## HUTCHINS AND PICKET *vs.* MILLS OLCUTT.

The accepting of a negotiable promissory note in payment of an account for labor bestowed on any article, is such a manifestation of the intention of the party taking the note to rely on the personal security of the maker of the note, as to be a waiver of any lien which he might have had on the article on which the labor was bestowed, whether such note be payable on demand, or at a future time, and whether negotiated or not.

The taking such a note i⬛⬛⬛⬛⬛⬛⬛⬛ lien which the law gives as a charge on the property on w⬛⬛⬛⬛⬛⬛⬛⬛ed.

In such case the lien does⬛⬛⬛⬛⬛⬛⬛ and follow it into the hands of any one to whom it may be nego⬛⬛⬛⬛⬛⬛ot attach to it even in the hands of the payee.

A promissory note given and rece⬛⬛⬛ *payment* of an antecedent account, is a bar to an action on that account, whether the note be paid or not.

If a person accept a note in satisfaction of his debt, he is paid by his own agreement, and cannot sue for his original debt, if there be no fraud or deception in giving the note.

Where one received a promissory note on settlement of an antecedent account, and wrote thereon, " Received payment by note," and delivered the account so receipted to the debtor, it was held that the receipt was *prima facie* evidence of the payment of the account.

This was an action of *trover* for two boxes of pine boards. Plea, the *general issue.* On the trial the plaintiff adduced evidence tending to show, that one Slyfield in the fall of 1828, procured a large quantity of pine lumber to be sawed at the defendant's mills, on Connecticut river, below Hanover ; that part of said lumber belonged to Slyfield and one Little, and the remainder belonged to Slyfield and one Gregory ; that the defendant resided at Hanover, and Slyfield, Little and Gregory resided at Haverhill, all in the state of New-Hampshire ; that Slyfield in the month of December, 1828, after the lumber was sawed, and while it continued at the defendant's mills, and in his possession, sold his part of it to the plaintiffs ; that after the sale, on the 12th day of December, 1828, Slyfield called on *Olcutt* to settle for the sawing, and on that occasion Slyfield executed and delivered to *Olcutt* two notes, one signed by himself, for himself and Little, to the amount of the sawing of the lumber belonging to Slyfield and Little, and also gave a note signed by himself, for himself and Gregory, for the amount of the sawing of the lumber belonging to Slyfield and Gregory ; the notes were payable on demand to *Olcutt*, or order ; and on that occasion *Olcutt* gave Slyfield a bill of the sawing receipted under his hand, as follows, to wit : " Received payment by note ;" that in May, 1829, the plaintiffs proceeded to raft the lumber, when the defendant retained two boxes thereof for sawing, until the same should be paid, and for

Orange.
February,
1832.

Hutchins et al.
vs.
Olcutt.

which this action was brought. The defendant adduced testimony tending to prove, that the lumber had ever continued in his possession from the time of the sawing until the time of detaining the two boxes ; that said notes had not been paid or negotiated. The court charged the jury, that, if they found the plaintiffs were owners of the boards in question, they having purchased of Slyfield, who procured them to be sawed at the defendant's mills, and that afterwards Slyfield settled with the defendant for all the sawing, by giving the two negotiable notes, and thereupon the defendant receipted his bills of sawing, in the manner proved, the notes so received by the defendant were payment of his bills for sawing, and the defendant had no longer a lien on the boards for his services ; that the defendant by receiving said notes in payment, as his receipt states, for the sawing, he waived his lien upon the boards ; and whether the notes were ever paid or not, the lien would not subsequently attach by the plaintifts suffering their boards to remain in the defendant's mill yard.

A verdict being returned for the plaintiffs, the defendant filed exceptions to the charge of the court, and removed the cause to this Court, and prayed for a new trial.

After argument by *Mr. Collamer*, for defendant, and by *Mr. Burbank*, for plaintiffs.

The opinion of the Court was delivered by

WILLIAMS, J.—The defendant claims a right in this case to detain the lumber for which this action was brought, until he is paid a sum of money due to him from the firm of Slyfield & Little and Slyfield & Gregory, for sawing the same. The case presents the following questions.

1. Whether a person has any lien on lumber, sawed at his mills, for the sawing.

2nd. Whether the lien, if any existed, was waived by accepting the negotiable promissory note of Slyfield in payment of the account for sawing.

3d. Whether the demand, for which the lien is claimed, *was paid* by the promissory note.

The two last questions are in some measure the same, and as it respects the plaintiffs, if either are decided in their favor, it is immaterial how the other may be considered.

On the first question the views of the Court are not all alike,

and a decision of it becomes unimportant from the conclusion to which we have come on the other points of the case.

ORANGE,
February,
1832.

Hatchins et al.
vs.
O'cutt.

In New Hampshire it has been decided, in a case relating to the mills of the defendant, where this lumber was sawed, that the owner of the mills has a lien on the lumber there sawed, for the price of the labour bestowed.

Admitting that such lien does exist, it is what the law denominates a particular lien, for the value of the labor bestowed on the property in question, arising either from the common law, or particular usage.

I am not aware that the second question has ever been directly decided, and probably a decision either way, upon the particular facts in this case, could be supported by the reasons adopted by the Judges, if not by their decisions, in some of the cases which have been adjudged. I think however this general principle may be inferred from all the cases ; that the right of lien accompanies an implied contract ; that whenever there is an antecedent contract inconsistent with the existence of such right, or when the implied contract is extinguished, either no right of lien attaches in the first instance, or is waived in the last.

In relation to particular liens, like the one under consideration, it was given in the first place in, and probably confined to, those cases where the law created an obligation on the person to receive the goods of another and be at some expense about them. The right has been extended to those cases where goods have been delivered to a tradesman for the execution of the purposes of his trade, and the benefit of this right has been claimed and allowed by many trades which were unknown to the common law.

This right formerly was not considered as existing, where there was an antecedent agreement for the labour, although such agreement extended no further than merely to fix the price for the same. Thus it was decided, that if a man put cloths to a tailor to make, the tailor might detain them until satisfied for the making ; but if a contract was made that he should have so much for making, he could not detain them.—2 *Ro. Ab. p.* 92. The case of *Brenan* vs. *Currint, Sayer,* 224, was decided upon this principle. The authority of this latter case, however, has been questioned several times.—*Hutton* vs. *Bragg,* 7 *Taun.* 14 ; and was expressly overruled in the case of *Chase* vs. *Westmore,* 5 *M. and S.* 180.

Still, it is considered, that if there is a special contract for a

ORANGE,
February,
1832.

Hutchins et al.
vs.
Olcutt.

particular time, or mode of paymen, the workman can set up no claim inconsistent with the terms of such contract.

In the case of *Stevenson* vs. *Blacklock*, 1 *M. and S.* 535, *Lord Ellenboro'* says, that, when there is an express antecedent contract between the parties, a lien, which grows out of an implied contract, does not arise.

And in the case of *Cowell* vs. *Simpson*, 15 *Ves.* 275, the *Lord Chancellor* considers the right of lien as a right accompanying an implied contract.

From these cases it may be inferred, that if there is a special contract to accept of a particular mode of payment of a demand, to which a right of lien would otherwise attach, or to give a time or credit for the payment, that a claim to detain the possession until the payment is made, would be inconsistent with such contract, and could not be maintained. We think it will follow from this, that if the agreement was to receive the note of the debtor in payment of such demand, there could be no lien after such contract was complied with and the note given.

The question then will arise, whether, if there is no such antecedent agreement, the right of lien will be waived by taking such note afterwards ; and here it must be admitted that the authorities are not explicit upon this subject, and that the remarks which have fallen from different judges and chancellors cannot be always reconciled.

In regard to the equitable lien the vendor of real estate has for the purchase money, which, though founded in natural equity, results, as it has been said, out of the law of the court of chancery, (a lien which has not as yet been contended for in this state, to my knowledge,) it has been a question much agitated, whether taking a bond or bill for the purchase money is a waiver of the lien. It was decided by *Lord Ashley* in the case of *Fawell* vs. *Heelis*, *Amb.* 724, that taking a bond for the consideration money, on the sale of real estate, was a satisfaction of the purchase money, and that the vendor had no further lien against the creditors of the purchaser. It has always appeared to me that the arguments in that case in favor of that position were very satisfactory. It has however been considered differently in other cases. In *Macreath* vs. *Symmons*, 15 *Ves.* 328, *Lord Eldon* reviews all the cases and comes to the conclusion that there is no inflexible rule, that where the vendor of an estate takes a security for the consideration, he has no lien, but that it must depend on the intention of the vendor to relinquish the lien and rely on the personal credit

ORANGE.
February,
1832.

Hutchins etal.
vs.
Olcutt.

of the individual, giving the security ; and this to be learned from the circumstances, of which the nature of the security is evidence. He very justly remarks upon this, that a vendor taking a security cannot know the situation on which he stands without the judgment of a court, as to how far the security taken does contain evidence of his manifest intention upon that point. *Sugden,* in his law of vendors, says, that where a security by bond, or note, is given, and it is intended that the vendor shall not have a lien on the estate for the money, a declaration to that effect should be inserted in the conveyance. If this lien should ever be contended for in this state, and adopted, it will probably be found necessary, especially under our recording system, that a declaration, that the vendor relies on such lien, should be inserted in the deed of conveyance, or that it should be considered as waived. *Chancellor Kent* considers that taking a note, bond, or bill, with *distinct* security, extinguishes the lien, or taking the responsibility of a third person.

The examination of the law upon the subject of this equitable lien, leaves us still in doubt as to the effect of taking a negotiable promissory note for the purchase money, on the lien. It was once considered as extinguishing the lien altogether. But as it is now considered, that the waiving the lien depends on the intention of the vendor, as manifested by the security taken, it may be considered as undecided ; and no case directly in point can be found. The case of *Grant* vs. *Mills,* 2 *Vesey and Beams,* 306, comes the nearest to this question of any one which I have found. The authority of that case,however,is doubted by *Chancellor Kent,* 4 *Cow.* 147.

In relation to the lien which an attorney has on the papers of his client, it has already been remarked, that it has been considered as a right accompanying an implied contract. It would follow from this, that if the implied contract is extinguished, or if a special contract is substituted in lieu of the implied contract, the right of lien which accompanies the implied contract, is also extinguished, or waived. Thus in the case of *Cowell* vs. *Simpson,* 15 *Ves.* 275, it was decided, that the lien of a solicitor on papers was superceded by taking security. The Lord Chancellor places it upon the ground, that by taking a security, the lien is gone, and cannot accompany that special security which determines the implied contract, that if the right " commenced under an implied contract, and afterwards a special contract is made for payment, in the nature of things, the one contract destroys the other."

70

ORANGE,
*February,*
1832.

Hutchins et al.
*vs.*
Olcutt.

And in the case of *Stevenson* vs. *Blacklock,* before mentioned, where *Lord Ellenborough* seems reluctant to assent to the general principles of the case of *Cowell* vs. *Simpson,* yet speaks of the right of lien as growing out of an implied contract, and lays stress in that case upon the fact, that the implied contract on his *quantum meruit,* and his lien, was not affected by his forbearing to sue. Of this case it may be remarked, that it did not involve the question, whether taking securities destroys a lien, which had previously been acquired. The paper, which the defendant claimed a right to detain, did not come into his hands until after the bills which he had received for his professional business had been dishonored ; and the cause seems to have been decided upon the ground, that those bills did not extinguish, or were not received in payment of, the balance due to the defendant.

If the subject of waiver as to this species of lien was to be placed on the same ground as it is in regard to the equitable lien of the vendor of real estate for the purchase money, to wit, the intention of the vendor, it then would be important, that the court should determine in certain cases, what should be evidence of such intention. Otherwise, it will be found that it will be attended with the same inconvenience suggested in relation to those liens, viz. that the vendor and vendee must await the judgement of the court to know whether the security or contract taken, is to be considered as plenary evidence of the waiver of such lien.

To avoid any inconveniences of this kind in regard to that species of lien which is contended for in this case ; considering also, that the accepting of a negotiable promissory note is an extinguishment of any implied contract, on the part of the maker, to pay the consideration for which the note was given, we are disposed to say, that the accepting of a negotiable promissory note in payment of an account for labour bestowed on any article, is such a manifestation of the intention of the party taking the note to rely on the personal security of the maker of the note, as to be a waiver of any lien, which he might have had on the articles on which the labour was bestowed, whether such note is payable on demand or at a future time, and whether negotiable or not ; that the taking such note is of itself a waiver of any lien, which the law gave as a charge upon the property, on which the labor was bestowed ;— that the lien cannot attach to the note, and follow it into the hands of any one, to whom it may be negociated, and shall not attach to it, even in the hands of the payee.

On the third question, which arises in this case, which is in

some measure involved and has been considered in the other, <span>ORANGE, February, 1832.</span> our views are against the defendant. On the question, whether receiving a promissory note shall be considered as payment of an antecedent account, different decisions have been had in different states. It will not be of any importance to examine them particularly here. The rule of law undoubtedly is, that a promisory note, given and *received in payment* of an antecedent account, is a bar to an action on that account, whether the note be paid or not, —that if a person accept a note in satisfaction of his debt, he is paid by his own agreement, and cannot sue for his original debt, if there was no fraud or deception in giving the note.—*Harris* vs. *Johnston*, 3 *Cranch* 3**8**; *Sheeley* vs. *Mandeville et al*, 6 *Cranch* 253; *Parker* vs. *United States*, *Peters'* *C. R.* 262. This is recognized as the law in New-Hampshire ; 1 *N. H. Rep.* 281, *Wright* vs. * * * * * ; and would be fatal to the claim of the defendant in that state, where this contract was made, and where this right of lien is said to exist, even if a different rule of law had obtained in this state.

*Hutchins et al. vs. Olcutt.*

*3I3*

The general received opinion in this state has been, that a note thus received was payment; and we are all agreed, that the receipt attached to this account was *prima facie* evidence of the payment of the account.

If there was any fraud or misrepresentation on the part of the person giving it, to induce the defendant to receive it in payment; or if there was an ignorance, on the part of the person taking it, that any other person was holden, whose name did not appear, and in consequence of this ignorance the note of an insolvent partner, or joint contractor, was taken in payment of a demand against a firm who were responsible, the presumption arising from the receipt might be done away, and a recovery had against the persons originally liable on the account; but there is nothing of that in this case.

If the account of the defendant for sawing the lumber was paid, he could have had no further right of lien on the lumber for the sawing, especially against these plaintiffs, who had purchased the same of the original owners.

The judgement of the county court must therefore be affirmed.

*Burbank*, for plaintiff.

*Collamer*, for defendant.