JEREMIAH W. SELBY, Appellant, *vs.* GEORGE W. STANLEY, ET ALS., Respondents.

APPEAL FROM THE DISTRICT COURT OF RAMSEY COUNTY.

In the sale of real estate, when the vendor shall take any security for the purchase money upon the land sold, or upon any other land, or by pledge of chattels, or by the absolute or conditional obligation of a third person, or any other security than the personal obligation or promise of the vendee, such fact shall be deemed to be conclusive of his intention to abandon his equitable lien upon the land for the purchase money, unless he retain it by special agreement.

An equitable lien for the purchase money of real estate, although existing as between vendor and vendee, will not follow the land into the hands of a *bona fide* purchaser, without notice of its existence.

Points and authorities of Appellant.

I. A vendor of real estate, or of any interest therein, has a lien thereon for the purchase money. *Willard's Eq. Ju., ch. 7, p. 443, and authorities there cited; Kent's Com., vol. 4, p. 155; marginal p. 152, and authorities there cited; Adams' Eq., p. 284; marginal p. 128; Hallock et al. vs. Smith et al., 3 Barb. S. C. Rep., p. 267; Bradley vs. Bailey, 1 Barb. Ch. Rep., p. 152.*

II. A statement made by the vendor of real estate to a party about to purchase, that such real estate is under a mortgage, and the record of an invalid mortgage upon the same premises, is sufficient notice to place the vendee in the same position as the vendor, as to equities of third parties against the land. *Willard's Eq. Ju., p. 249 to 257 inclusive; Adams' Eq., p. 315 to 327 inc.; marginal p. 151; Hawley vs. Cramer, 4 Craven, p. 717; Harper vs. Reno, 1 Freeman Ch. 323; Green vs. Sluyter, 4 Johnson Ch. 47; Parkhurst vs.*

*Alexander,* 1 *Johns. Ch. Rep., p.* 398, 399; *Story's Eq. Ju., vol.* 1, *p.* 425, *sec.* 397; *Le Neve vs. Le Neve,* 3 *Atkins, p.* 646.

III. The fact that the vendor has taken a note from the vendee for the purchase money, will not divest his lien. *Grant vs. Mills,* 2d *Ves. and Beames' Ch., p.* 309; *Exparte, Peake,* 1st *Madd., p.* 356; *Story's Eq. Ju., vol.* 2, *sec.* 1248; *Hilliard on Real Prop., vol.* 1, *p.* 378, *sec.* 34, *chp.* 39.

Points and authorities of Respondent.

I. A mortgage executed by a *femme covert* without her husband *joining* in the conveyance is *void.* 2 *Kent's Com.,* 150–4; 7 *Blackford's R.,* 66; 4 *Comstock's R.,* 12, 29 *; Rev. Stat. of Min., p.* 365, *secs.* 105, 107; *p.* 211, 212, *secs.* 2, 12, 13. *At common law* a married woman could convey by deed her *separate* property without her husband joining. 2 *Kent's Com.,* 162–167; 2 *Story's Eq., secs.* 1388, 1390, 1393, 1394; 4 *Comstock's R.,* 11, 28; 4 *Barb. R.* But her *separate* property was such only as was settled or conveyed to *trustees* for her use and benefit, and in which the *husband* had *no interest or estate.* 2 *Kent's Com.,* 162; 2 *Story's Eq., sec.* 1388; 4 *Barbour's R.;* 4 *Comstock's R.,* 11, 27. Yet such property as was not *separate,* and in which the *husband* would have a *control* or *estate by the courtesy,* she could not convey by *her separate* deed (such deed being void), but only by *fine and recovery;* and a conveyance by fine, &c., by the wife alone could be avoided at any time during his life by the husband's dissent. 2 *Kent's Com.,* 150; 2 *Story's Eq., secs.* 1392, 1393; 4 *Comstock's R.,* 12, 29; 4 *Barb. R.,* (*S. C.*) The property mortgaged in the case at bar was not the *separate* property of Amelia Stanley, for her *husband* had the *right* in it of possession and *control,* and an *estate* by the courtesy. *Rev. Stat. of Min., p.* 365–6, *secs.* 105–107. So that at common law she could not have conveyed this land by *deed;* and if she had conveyed by *fine,* her husband could by dissent have avoided her fine and recovery.

But one statute *enables* the wife to convey her real estate by *deed,* (which at common law would have been void,) *by joining with her husband in such deed. Rev. Stat., p.* 211, *sec.* 2; 4 *Comstock's R.,* 17, 33. The statute is in the ordi-

nary form of enabling acts; (4 *Comstock's R.*, 33,) and a party conveying must comply strictly with its terms. 2 *Story's Eq.*, sec. 1392; 2 *Kent's Com.*, 152–3. The statute further expressly *prohibits* the wife from disposing of any of her *real estate* (which includes every interest which she has in lands, whether the same be her separate property or not,) *without the consent of her husband. Rev. Stat., p.* 365, *sec.* 105 ; *p.* 33, *sec.* 1, *sub.* 8. Such consent must be expressed by the husband *joining* in the deed. 2 *Kent's Com.*, 152; 4 *Com. R.*, 33. But in this case the husband expressly *dissented*, by joining in a deed to Cooley subsequent to the wife's individual mortgage.

II. No vendor's lien ever existed in favor of the Plaintiff against the mortgaged premises in the possession of Cooley.

1. The complaint alleges that the consideration for Plaintiff's release and transfer was the *note and mortgage*, which upon the principle that "*expressum facit cessare tacitum,*" necessarily excludes the idea that any lien was intended. 1 *Paige's Ch. R.*, 31 ; 1 *Burrell Dict.*

2. It does not appear that Selby was the vendor. It is not alleged that he sold the land to Amelia Stanley. He was not the owner of the premises at the time of sale to Amelia Stanley, for he was only the *mortgagee. Vide:* 4 *Kent's Com.*, 159; *Douglas R.*, 630. He, Selby, had sold the land to Kern *et al.*, before it was divided into lots ; afterwards, and long before the release by the Plantiff, they (Kern *et al.*) divided land and sold two of the lots to Amelia Stanley by their bond for deed.

Selby was not privy to such sale, nor was it any part of the transaction by which he released, &c.

Selby only provided the mode of payment, and in that respect only appears *as a third person advancing the purchase money, which raises no lien in his favor.* 13 *Ohio R.*, 148.

III. But if a lien had existed in favor of Selby, such lien was *waived* by taking the security of George W. Stanley, named on the note, which was negotiable, and drawing a higher rate of interest than the legal rate. 4 *Kent's Com.*, 153 *and note;* 2 *Story's Eq.*, *sec.* 1226, *and Note;* 1 *Fomb. Eq. R.*, 1 *ch.* 3, *sec.* 3, *n.* 3; 4 *Comstock's R.*, 312 ; 1 *Paige's R.*,

20, 30; 1 *Johns. Ch. R.*, 308; 9 *Cow. R.*, 118, *Note;* 1 *Hopk. Ch. R.*, 569, &c.; 1 *Barb. Ch. R.*, 125; *Sug. on Vendors*, 552; 1 *Mason's R.*, 191; 4 *Wheat. R.*, 255; 2 *Wash. R.*, 141; *Hardin*, 48; 5 *Mumf.*, 297; 5 *Ohio*, 35; 14 *Ohio*, 428; 20 *Ohio*, 546; 3 *Alabama R.*, 302; 5 *Hammond's R.*, 35; 2 *Yerger R.*, 34; 3 *Bibb's R.*, 133; 13 *Smeed and Marsh. R.*, 346.

The lien would not subsist against the property in the hands of a *bona fide* purchaser for a valuable consideration *without notice*. 4 *Kent's Com.*, 154; 2 *Story's Eq.*, sec. 1228.

V. No notice was given to Cooley before purchase, &c. *Ib., Ib.*

SANBORN & LUND, Counsel for Appellants.

D. C. COOLEY, Counsel for Respondent.

*By the Court.*—FLANDRAU, J. Selby, the Plaintiff, sold, by deed of warranty, to one Kern and some others, a tract of 9 86:100 acres of land. The grantees paid part of the purchase money down, and gave a mortgage back to Selby for $7095, the balance due. They then laid the land out into lots and blocks as an addition to St. Paul. Selby's grantees afterwards sold the two lots in question to Amelia Stanley, one of the defendants, who was, at the time of the sale to her, the wife of George W. Stanley, the other defendant. Half of the purchase money was paid to Kern by Mrs. Stanley, and an arrangement was entered into by which Selby released the two lots in question from the operation of his mortgage against Kern and others, and took, instead thereof, the mortgage set up in the complaint, executed, by Mrs. Stanley alone, upon the two lots in question, and also the joint note of Mrs. Stanley and her husband for the amount of the mortgage. Mrs. Stanley and her husband afterwards conveyed the two lots in question to the Defendant, Cooley, by warrantee deed, containing a covenant against incumbrances. The mortgage from Mrs. Stanley to Selby was at this time on record, and Cooley was informed of its existence by the Stanleys, but he had no notice of what formed the consideration of it, except what appeared in the instrument itself, which was four hundred dollars.

There are two insurmountable obstacles in the way of Selby's enforcing the amount of the Stanley mortgage against the land in question in the hands of Cooley, as an equitable lien for purchase money, and an equally fatal one to his enforcing it by foreclosure of the mortgage itself.

The mortgage having been made by Mrs. Stanley, while the wife of the Defendant, George W. Stanley, without his consent, is void, by *section* 106, *of the Compiled Statutes, on page* 571, which section, after providing that a married woman may ʳreceive property by inheritance, gift, grant, or devise, &c., contains this restriction : " *Provided,* that nothing in this section contained, shall be construed to authorize any married woman to give, grant, or sell, any such real or personal property during coverture, without the consent of her husband, except by order of the district court of the county."

This renders the mortgage of Mrs. Stanley invalid, and of no force whatever. But the Plaintiff claims that as the debt to him, for which this mortgage was given, was originally one due for purchase money, that he still holds an equitable lien on the land for the amount.

We think he has, by his own acts, clearly waived this lien ; and even if he had not done so, he could not have enforced it against the land in the hands of Cooley, who was a *bona fide* purchaser, without notice. *Comp. Stats., p.* 382, *sec.* 10.

The equitable lien upon lands for the purchase money has always been recognized by the Courts of England and of this country, with the exception of a few of the States. In a note to *Adams' Equity, at page* 340, the exceptional cases are collected, and it seems that this lien has not been sanctioned in Pennsylvania—7 *Serg. and R.,* 64; 3 *Penn.,* 72, 73; 5 *Penn.,* 403; nor in North or South Carolina—3 *Ired. Eq.,* 182, 259; *Id.,* 180; 2 *Dessaus,* 509; nor in Massachusetts— 1 *Mason,* 191; and it is yet unsettled in some of the States— 5 *Conn.,* 468; 6 *Conn.,* 285; 17 *Conn.,* 576; 1 *Har.,* 69; 4 *Verm.,* 549.

Not having seen theʳreports of these cases, I cannot say that they go the full length claimed for them in the note from which I take them. The utter ignoring of the lien, even while the land is in the hand of the vendee, is such a departure from

the general rule of equity, that I am inclined to doubt that they go to that "extent, and my doubts are strengthened by frequent references to the holdings in these cases, which I have met with in examining this point. For instance, Chancellor Walworth, in *Fish vs. Howland*, 1 *Paige, p.* 20, cites the case in 2 *Dessaus, p.* 509, as the only exception he has found among the American cases, which was decided upon *Farwell vs. Heelis, Amb.,* 726, since overruled.

The modern commentators all recognize this species of lien as well established in equity. 2 *Madd. Ch.,* 128, 129, 130; 4 *Kent's Com.,* 151; 2 *Story's Eq.,* sec. 1217; *Adams' Eq., 3d Am. Ed.,* 1855, *marg. p.* 127.

But the much more difficult question, in England, has been to settle by what acts the vendor waives his lien. The leading modern case in England is *Mackreth vs. Symmons,* 15 *Ves., p.* 329, which was decided by Lord Chancellor Eldon, in 1808. He says, in speaking of such liens, "Some doubt was thrown in the argument upon the question of lien between the vendor and vendee; but it was not carried far; and it is too late to raise a doubt upon it." But he expresses himself as not satisfied with any rule which he has been able to find on the question, of what act will amount to a waiver of the lien?

He then reviews the cases upon this point, in their chronological order of decision, giving the point of each case, in which I shall not attempt to follow him farther than by citing the cases in the order in which he places them, and the general result at which he arrives from the examination. The cases are, *Hearn vs. Botelers, Cary,* 25; *Chapman vs. Tanner,* 1 *Vern.,* 267; *Bond vs. Kent.* 2 *Vern.,* 281; *Coppin vs. Coppin,* 2 *P. Will,* 291; *Gibbons vs. Baddall,* 2 *Eq. Ca. Ab. Tit. Purchaser,* 682, *Note; Pollexfen vs. Moore,* 3 *Atk.,* 272; *Harrison vs. Southcote,* 2 *Ves.,* 389, 393; *Walker vs. Preswick,* 2 *Ves.,* 622; *Farwell vs. Heelis, Amb.,* 721; *Burgess vs. Wheate,* 1 *Black.,* 123, 150; *Tardiff vs. Scrughan, cited Amb.,* 725-6; 1 *Bro. C. C., 3d Ed.,* 423; *Becket vs. Cordly,* 1 *Bro. C. C.,* 353, 358; *Blackburn vs. Gregson,* 1 *Bro. C. C.,* 420; *Smith vs. Hibbard,* 2 *Dick,* 730; *Austen vs. Halsey,* 6 *Ves. Jr.,* 475; *Elliot vs. Edwards,* 3 *Bos. & Pul.,* 181, 183; *Nairn vs. Prowse,* 6 *Ves. Jr.,* 752; *Hughes vs. Kearney,* 1 *Sch. & Lef.,* 132.

Lord Eldon then says, "From all these authorities the inference is, first, that, generally speaking, there is such a lien; secondly, that in those general cases, in which there would be the lien as between vendor and vendee, the vendor will have the lien against a third person, who had notice that the money was not paid. These two points seem to be clearly settled. I do not hesitate to say, that if I had found no authority, that the lien would attach upon a third person, having notice, I should have had no difficulty in deciding that upon principle; as I cannot perceive the difference between this species of lien and other equities, by which third persons, having notice, are bound. * *      The modern authorities upon this subject have brought it to this inconvenient state, that the question is not a dry question upon the fact whether a security was taken, but it depends upon the circumstances of each case whether the Court is to infer that the lien was intended to be reserved, or that credit was given, and exclusively given, to the person from whom the other security was taken."

This case is cited by most of the American writers upon equity, and also in the decided cases, and is regarded as leaving the question, in England, as to what security taken by a vendor will discharge his lien for the purchase money, in great doubt and embarrassment, and as requiring the intervention and judgment of a Court in each particular case, to determine whether or not the lien has been waived.

The English cases admit this difficulty, and the Judges in pronouncing their judgments, regret that the rule had not been adopted that whenever the vendor accepts any security, other than that of the vendee, the lien should be gone. The cases collected by Lord Eldon in *Mackreth vs. Symmons,* above cited, have generally recognized the principle which Lord Eldon wishes had been settled, as the unbending rule, and have held that taking security of a third person, or special security by way of mortgage upon another estate than the one sold, did waive the equitable lien of the vendor, but the uncertainty remains, and is quite as embarrassing, because the rule of decision proceeds upon this theory—the lien of the vendor is presumed from the sale and non-payment, and the

burthen of proof is thrown upon the vendee to show that it has been relinquished ; the character of the security taken is then shown by the vendee, and is received as evidence of the inten-tion of the parties at the time of the transaction. If the nature of the security taken is such as to evince an intention on the part of the vendor to rely upon it for his payment, then he is held to have waived his equitable lien, or rather to have sub-stituted the security taken for it, thus leaving it a mere question of intention, which must necessarily be decided by different Judges in different ways upon the same evidence, as long as men's minds are variously organized.

Independent of the difficulty of applying the rule of the English courts above suggested, there is another which is equally decisive against it, mentioned by Chancellor Walworth, of New York, in *Fish vs. Howland*, 1 *Paige Ch. R.* 30, where, in speaking of the case of *Mackreth vs. Symmons*, he says, " Lord Eldon seems to think that the question of lien or no lien depends altogether upon the intention of the parties, and that each case must be determined upon that principle, and upon its own particular circumstances. If the actual intention of the parties was to govern the decision of the Courts, the lien would seldom be sustained, for it is probable that not one person in a hundred, who conveys or purchases real estate, is aware of the existence of such a principle of equity."

We are relieved, however, in this country at the present day, from combatting the English authorities on this point, as the whole doctrine has been frequently discussed, and very learnedly examined, both upon principle and authority, in our own Courts, and I think that I am fully justified in saying that the English rule has not been followed, and that the rule which the English Judges have claimed to be the better one, and have regretted that their Courts had not adopted, has obtained so generally in America, that in accepting it in Minnesota, we not only sustain our own convictions upon the point, but con-form to the general current and weight of authority.

In the case of *Fish vs. Howland*. 1 *Paige Ch. R.* 20, the Chancellor made the same review of the English cases that was made by Lord Eldon in *Mackreth vs. Symmons*, and also reviews Lord Eldon in the latter case, and concludes that the

question of what is a waiver of the lien, "is still unsettled in that country." He then lays down the rule, in New York, to be as follows: "A much safer rule, I apprehend, is to sustain the implied lien, when the vendor has taken the mere personal security of the purchaser only, and to consider any bond, note or covenant given by the vendee alone, as intended only to countervail the receipt of the purchase money contained in the deed, or to show the time and manner in which the payment is to be made, unless there is an express agreement between the parties to waive the equitable lien; and on the other hand, to consider the lien as waived, whenever any security is taken on the land, or otherwise, for the whole or any part of the purchase money, unless there is an express agreement that the equitable lien upon the land shall be retained. This constitutes a safe rule, easily understood, and which I consider established by a weight of authority in this country, which is not easily shaken."

This rule is certainly much more in accordance with the well known intention of parties in such cases. In almost every case where a vendor takes a security upon the land sold, or otherwise, beyond the mere personal obligation of the vendee, he, *in fact*, relies upon such security and bases no expectations upon his equitable lien, because, as Chancellor Walworth has well said, "not one person in a hundred, who conveys or purchases real estate, is aware of the existence of such a principle of equity." It is certainly much more easy of application to the various aspects in which the question presents itself, and infinitely more certain in reaching the truth, and producing uniformity of decision, than any other that could be applied.

By this rule parties may easily decide for themselves, without the aid of a court of equity, whether the lien has or has not been waived, or by applying it at the time they make their grant and purchase determine exactly what their rights and securities are.

In *Gilman vs. Brown*, 1 *Mason*, *R.* 212, the whole doctrine of the waiver of the equitable lien was again fully gone over, and it was held that the taking of negotiable notes, payable at a future day, with indorsers, was a waiver of the lien. The Judge says, in reasoning the question, "looking to the prin-

ciple upon which the original doctrine of lien is established, I have no hesitation to declare that taking the security of a third person for the purchase money, ought to be held a complete waiver of any lien upon the land, and that in a case standing upon such a fact, it would be very difficult to bring my mind to a different conclusion. At all events it is *prima facie* evidence of such a waiver, and the onus is on the vendor to prove by the most cogent and irresistible circumstances, that it ought not to have that effect.

In this latter remark, the Court seems to admit that it is not conclusive, but has the effect of changing the onus of proof back again to the vendor to clear up the strong presumption of waiver raised by taking the security of a third person. To admit of any explanation, is to leave the question in all the uncertainty which is so much deplored in England, by making it one of intention, to be decided by evidence. The only way to avoid this difficulty is to make the taking of any security beyond the mere personal obligation of the vendee, an absolute and unanswerable waiver of the lien. It is imbecile to admit the propriety of this rule of decision, and yet falter in its adoption. In a new State like our own, we enjoy the advantage of all the light which has been thrown upon questions, without being tied down by precedents which are admitted to be founded in error ; and therefore, we are free to select, as the basis of our decisions, whatever may appear to be founded on principle and reason, rejecting what is spurious and unsound, even if dignified by age, and the forced recognition of more learned and able Judges.

The case of *Gilman vs Brown*, last cited, was approved by the Supreme Court of the United States, in 4 *Wheat. R.* 290–292.

The rule of an absolute extinguishment of the lien, resulting from the taking of security other than the personal obligation of the vendee, is fully recognized in 4 *Kent Com. p.* 152–154, *Marginal, Seventh Ed.* Also it is fairly inferable from the text and notes of 2 *Story Eq., Sec.* 1226, where, as is usual in most of his elementary writings, every thing upon both sides of a question is cited, with a studious avoidance of any positive views of his own being submitted as a result of his labors.

See also *Adams' Equity, Third Am. Ed., Marginal pages* 128–129.

The rule upon this point, then, that we shall adopt, is : That whenever the vendor shall take any security for the purchase money upon the land sold, or upon any other land, or by pledge of chattels, or by the absolute or conditional obligation of a third person, or any other security than the personal obligation or promise of the vendee, such fact shall be deemed to be conclusive of his intention to abandon his equitable lien, unless he retain it by express agreement.

In the case at bar, when Selby sold the land to Kern and others, and took back from them a mortgage on the same, to secure the payment of the balance of the unpaid purchase money, he evidently relied upon the mortgage, and the mortgage alone, for his security ; and it seems to me that to hold in any possible aspect of such a case, (except perhaps where an express agreement was made) that he relied upon his equitable lien, would be a most unwarrantable perversion of facts, and their legitimate results. But if he had not waived his lien in this respect as to the whole tract, when he exchanged his security, which was actually taken for the purchase money, for the mortgage of a third person upon a part of the land, and the note of two persons, entire strangers to the original purchase, it would be difficult indeed to conceive how an equitable lien for Kern's original purchase money could be raised against the land, upon these second securities turning out valueless, even while the land remained in the hands of Kern's grantees ; but to carry the lien still farther, and enforce it against the land in the hands of a *bona fide* purchaser without notice, would be a stretch of equity which we are not willing to sanction. Such, however, is the condition of the Plaintiff's case.

In regard to the question of notice, we think the rule is perfectly well settled that even when the lien is clear, as between the vendor and vendee, it will not follow the land into the hands of a *bona fide* purchaser without notice of its existence.

The policy of our law is to make liens, even when actually reserved by mortgage, not available against parties who purchase without notice, actual or constructive, and I can discover no principle which confers greater privileges upon equitable

liens, in this respect, than upon those much more definite and certain ones, created by the parties, and recognized at law. Where a purchaser has notice of the existence of an equitable lien for purchase money upon the land he buys, such lien will attach to the land in his hands, and the converse of the proposition is equally true. See *Bayley vs. Greenleaf*, 7 *Wheat. Rep.* 46, where the Supreme Court of the United States distinctly hold this point. See also *Roberts vs. Salisbury*, 3 *Gil. & Johns.* 425; *Ganer vs. Chester*, 5 *Yergers, Tenn. Rep.* 205; 4 *Kent's Com. Marginal pages* 153–54, *and note;* 2 *Story's Eq. Sec.* 1228; *also Id. Secs.* 788, 789; *Champion vs. Brown*, 6 *John. Ch. R. p.* 402, 403. Authorities could be multiplied upon this point to an almost indefinite extent from the books of both England and our own country, but it is scarcely necessary, as the principle will not be questioned.

The referee finds that Cooley had no notice of the consideration of the Stanley mortgage, except from what appears in the instrument, and that is silent upon the question of purchase money.

The order confirming the report of the referee is affirmed, and the case remanded for judgment.