Smith, C. J.
The plaintiff sued the defendant in the court of common pleas, asking that he be adjudged to allow the claim of the plaintiff, set out in his petition, as a preferred claim on the proceeds in the hands of the assignee, arising from the sale by him of certain electrotype plates, which Helmick before his assignment had delivered to the plaintiff, to have him print therefrom, for him, certain music books and sheet music, and which plates at the time of the assignment remained in the possession of Wrightson. He alleged that Helmick owed him for printing therefrom, the amount due on seven promissory notes and a small account, particularly described in the petition, and that he had a lien on the plates for the amounts so due to him, and that not waiving his lien thereon, he was induced by the false and fraudulent representations of Helmick, acting for Bettinger, to deliver them to the assignee, who sold them,' and still has the money derived therefrom in his possession. That the assignee has allowed his demand as a general claim, but refuses to allow it as a, preferred one, as to the proceeds of the sale of the plates. He then alleged that he had a lien thereon, first, at common law; second, under a contract made between him and Helmick, when the plates were left with him, and third, by virtue of a local custom of the city of Cincinnati.
*383 The answer of the assignee admitted that as assignee he had sold said plates, and that he had allowed the claim of the plaintiff only as a general and unsecured one, and denied all the other averments of the petition.
The questions thus raised on the pleadings, and as to which we have heard evidence, are these:
(1st.) Had the plaintiff at the time of the assignment by Helmick, any lien on the plates.
(2nd.) If so, did he voluntarily give them up to the assignee to be sold, or was he induced to do this by the fraudulent representations of an agent of Mr. Bettinger.
If he had a lien originally, but voluntarily turned these plates over to Bettinger to be sold, without any reservation on his part, and without being induced by fraud to do so, we suppose his lien was gone; as much so as if he had before the assignment voluntarily turned them over to Helmick himself. Such a lien can only be asserted while the property is in the possession of the party claiming it, unless he has been improperly deprived of such possession.
Had the plaintiff then any lien upon the plates? There is nothing in the evidence to sustain the allegation of the petition, that there was a contract between the parties that Wrightson should have a lien thereon; and the plaintiff therefore must rest his claim upon the other grounds stated by him. And the next question is, had he a lien thereon at common law.
It is undoubtedly true, that when a person, from the nature of his occupation, receives, and is at trouble or expense about the personal property of another, he has a lien upon, and may retain it, until his contract price, or his reasonable charges therefor, are paid. And under this doctrine of the law, if Helmick had also furnished the paper on which Wrightson had printed the books or music from these plates, Wrightson would have had a lien upon the paper and the printing done thereon, until he was paid-for the work.
But we have not seen any authority which extends this rule to a case like the one under consideration — that is, that where an article or instrument is delivered by the owner *384 thereof to another person, with which instrument the latter is to perform work for the former, that the person so using it is entitled to a lien on the instrument itself. It is urged by-counsel that the reason for the lien is as strong in this case, as in the other, and there is force in the suggestion. But finding on authority anywhere which sanctions the idea, we think we would not be warranted in so holding.
Had the plaintiff a lien by the custom of persons engaged in such busines in this city ?
To make a local custom good, it must appear that it was long continued, without interruption, acquiesced in, reasonable, certain, and known to the parties to be affected thereby. Steamboat Albatross v. Wayne, 16 Ohio, 517; Overton on Liens, 18.
Without going into a full examination of the evidence adduced by the parties, it is sufficient to say, that in our.opinion, these requirements were not shown to exist in this case. There certainly was evidence on the part of the plaintiff which showed, that in a few instances this right to detain such plates had been asserted by the plaintiff and the proprietors of some other establishments like his in business in the city, and perhaps by a majority of them, and for quite a number of years; but even by them it was rarely exercised, and only when they found that they could not otherwise collect- their bills. Other houses, long established and in business here, neither knew or had heard of any such custom ; and so far as the plaintiff and Helmick are concerned, the proof is express that although they have had similar dealings and transactions for many years past, no such right was ever claimed by Wrightson, or came to the knowledge of Helmick; but that the plates from which the printing was done, were always allowed to be withdrawn at the pleasure of Helmick, and without any reference to the state of the accounts between them, and often when Helmick was indebted to the plaintiff for such printing therefrom. Such was the case also in the dealings of the plaintiff with Mr. Newhall, engaged here in like business with Helmick, and very extensively for several years. The course of dealing of the plaintiff with those two persons, and the lack of knowledge by them of the assertion of any such claim, *385 or of there being any such custom, is strong proof against the fact of its existence, and conclusive' evidence that it was not a local custom, known to, and therefore binding upon Helmick.
In addition to this, it appears from ‘the petition of the plaintiff, that his claim is founded principally on notes executed to him by Helmick, at various times prior to the assignment, all of which were made payable at a specified time after their respective dates. The receiving of such notes by Wrightson we understand to be a waiver of any lien he might otherwise have had therefor. Judge Swan, in his Treatise, states the law on this point thus': “ The lien exists whether there be an agreement to pay a stipulated price, or only’an implied contract to pay a reasonable price, unless there was a future time agreed upon for the payment, which would be^inconsistent with the right to retain the possession.” Citing Chase et al., assignees, v. Westmore, 5 M. & S., 180. The same doctrine is held in Hutchins v. Olcutt, 4 Vermont, 549. Williams, in his work on Personal Property, uses this language : “ And if the person having the lien, should take a security for his debt, payable at a distant day, his lien on this account would be lost; as it would be unreasonable that he should detain the goods till such future time of payment.” Citingj Cowell v. Simpson, 16 Ves., 275.
There are other difficulties in the way of a judgment for the plaintiff, as asked for. It seems to us that the evidence failed to identify with any certainty at all, that the whole debt of the plaintiff, or what particular part thereof, was incurred for printing from these particular plates; and as the whole stock of the assignor was sold by the assignee for a gross sum, and there is no way in which it can be ascertained what part of the purchase-money was on account of these plates, that it is impossible in this action,.under the evidence we have heard, to fix the amount of the fund in the hands of the assignee on which he should have a preference, if we had found he had a lien on the plates.
Sec. 6352, Rev. Stats., authorizes a person whose claim has been presented to an assignee for allowance, and rejected by him, to sue the assignee and obtain a judgment that the assignee allow the claim in settlemenUof his trust. But in this case the as *386 signee had allowed the claim, and we doubt if the section authorizes the claimant to'sue and obtain a judgment that his claim is first to be paid from a certain fund. If it is allowable, the court should only decide such a question when the proper parties — those interested^ the question — are before the court. In this case it appears that the assignor, before his assignment, had executed to two persons chattel mortgages upon these plates, and that they are asserting their liens by virtue thereof. But they are not parties to this controversy, and it would be manifestly improper for the court in this case, in which they are not parties, to hold and adjudge that the plaintiff had the first lien on the proceeds of this property. It seems to us, in conformity with the holdings of the supreme court, that the controversy is one which may be passed upon in the prohate court, where the creditors with their claims are all before the court on the question of distribution; but at all events that the court of common pleas originally, or this court on appeal therefrom, ought not to attempt to adjudicate as to the priority of the different claimants to the fund in question, until all who are interested have had an opportunity of being heard.
J. G. Raisin, for the plaintiff.
J. J. Glidden, for the defendant.
For these reasons the petition of the plaintiff will be dismissed with costs.