(94 South. 354)

### LATHROP LUMBER CO. v. FITTS et al.
### (2 Div. 801.)

(Supreme Court of Alabama.   Oct. 26, 1922.)

1. **Logs and logging** ⬦⟹26(3)—**One converting timber into lumber has lien thereon.**

One who by labor and service converts timber into lumber, thereby imparting an additional value to the product, has a common-law lien thereon.

2. **Liens** ⬦⟹1—**Possession essential to creation of common-law lien.**

Possession is essential to the creation of a common-law lien.

3. **Liens** ⬦⟹1—**To preserve lien possession must be continuous.**

To preserve a common-law lien, the possession must be continuous, since the essence of the lien is the right to retain possession until just demand is satisfied.

4. **Liens** ⬦⟹4—**Common-law liens not implied if engagements of parties are inconsistent with lien by implication.**

A common-law lien results from implication of law, but cannot be implied if the engagements the parties have assumed in their contract are inconsistent with a lien by implication.

5. **Liens** ⬦⟹4—**If time of stipulated payment contemplates lienor's release, common-law lien does not come into existence.**

While the parties to a contract may without preventing the creation of the common-law lien stipulate for a fixed sum, yet, if the time or mode of payment stipulated contemplates the asserted lienor's release or surrender of possession of chattels before the period for payment arrives, a lien at common law does not come into existence.

6. **Logs and logging** ⬦⟹26(3)—**Terms of payment in contract for manufacturing lumber held to preclude lien by implication.**

Where a contract for manufacturing timber into lumber provided for payment every two weeks and for delivery of possession of the product to a carrier for transportation, the release of the possession of the product was intended without regard to the occurrence or recurrence of periodic dates of payment; hence a common-law lien in favor or in protection of those manufacturing the timber did not come into existence; the contract's terms precluding a lien by implication.

Appeal from Circuit Court, Bibb County; S. F. Hobbs, Judge.

Bill to declare and enforce a common-law lien by R. E. Fitts and J. E. Melton against J. L. Gardner and the Lathrop Lumber Company. From a decree overruling demurrers, Lathrop Lumber Company appeals. Reversed and remanded.

Frank S. White & Sons, N. L. Steele, and Edward T. Rice, all of Birmingham, and Jerome T. Fuller, of Centerville, for appellant.

A common-law lien is the right to retain the possession of personal property until some debt due on, or secured by, such property shall be paid or satisfied. Jones on Liens (2d Ed.) § 21; 200 Ala. 586, 76 South. 944; 196 Ala. 346, 71 South. 694; 65 Ala. 382; 46 Ala. 483; 6 East, 21; 25 Cyc. 661. By suing out attachment and having lumber levied on, plaintiffs surrendered and abandoned their possession (if any) of said lum-

ber, placed the same in custodia legis, and thereby waived their alleged common-law lien. Jones on Liens (2d Ed.) § 1014; 132 U. S. 220, 10 Sup. Ct. 60, 33 L. Ed. 310; 64 Ala. 330; 46 Ala. 483; 5 Bing. 130; 39 Cal. 543; 17 Pick. (Mass.) 140, 28 Am. Dec. 282; Story on Agency (9th Ed.)' § 367; 17 R. C. L. 606; 9 Okl. 124, 60 Pac. 303, 50 L. R. A. 714; 25 Cyc. 674; 99 Ala. 573, 12 South. 410; 17 Ala. App. 289, 85 South. 825; (C. C.) 129 Fed. 455. There can be no lien at common law where the parties make a special agreement inconsistent with a lien for a particular mode of payment or for payment at a future particular time. Jones on Liens (2d Ed.) §§ 322, 325, 522, 1002; 105 N. Y. 234, 11 N. E. 500, 59 Am. Rep. 496; 8 N. H. 441, 31 Am. Dec. 198; 18 Johns. (N. Y.) 157, 9 Am. Dec. 193; 3 Vt. 302, 21 Am. Dec. 588; 7 Cranch (11 U. S.) 318, 3 L. Ed. 354; 4 Vt. 549, 24 Am. Dec. 634; 19 Am. & Eng. Enc. Law (2d Ed.) 28; 17 R. C. L. 607.

Lavender & Thompson, of Centerville, and John D. McQueen and H. A. Jones, both of Tuscaloosa, for appellees.

The operator of a sawmill has a lien on the lumber manufactured. 65 Wis. 26, 26 N. W. 188, 56 Am. Rep. 611; 86 Pa. 486, 27 Am. Rep. 723; 104 Ind. 118, 3 N. E. 811; 27 Mich. 6; 80 Mich. 254, 45 N. W. 81; 4 N. Y. 552; 33 Pa. 151; 3 Hill (N. Y.) 485, 38 Am. Dec. 663; 8 Iowa, 207. The existence of a special agreement between the parties for the payment of a fixed sum for labor is not inconsistent with a claim for lien for service. 2 Watts & S. (Pa.) 450, 37 Am. Dec. 523; 86 Pa. 486, 27 Am. Rep. 723; 95 Pa. 345, 40 Am. Rep. 659. Possession is not always essential to the retention of an equitable lien. 33 Ala. 534, 73 Am. Dec. 431; 76 Ala. 427. The common-law lien was not waived by appellees in causing an attachment to be levied on the lumber in their effort to enforce the statutory lien. 32 Conn. 21, 85 Am. Dec. 240; 114 Ala. 39, 21 South. 484; 36 Ark. 363; 194 Ill. 98, 62 N. E. 320; 71 Wash. 204, 128 Pac. 228; 45 W. Va. 527, 31 S. E. 951, 44 L. R. A. 561, 72 Am. St. Rep. 828; 16 Cal. 140, 76 Am. Dec. 507; 20 Mo. App. 347; 4 Wend. (N. Y.) 295; 26 Wend. (N. Y.) 467; 4 Allen (Mass.) 212; 10 Gray (Mass.) 352; 24 Me. 439, 41 Am. Dec. 391.

McCLELLAN, J. The original bill was filed by appellees against one Gardner and Lathrop Lumber Company, a corporation. The court overruled demurrers to the bill as amended, and this appeal results. The object of the bill, original and as amended, is to have declared and enforced a common-law lien on a large quantity of lumber which, under contract with the defendant Gardner. the appellees had manufactured from timber belonging to Gardner and stacked on the yard. Lathrop Lumber Company is interested as a purchaser or security holder from Gardner after Gardner's timber had been changed into the manufactured product by the efforts of appellees under the mentioned contract, and, as the bill avers, after the Lathrop Lumber Company knew or had notice of the service and labor bestowed to this end by the appellees. It appears from the amended bill and exhibits thereto that, upon the failure of Gardner to pay periodic installments stipulated in the contract for labor and service contemplated thereby, the appellees procured the levy by the sheriff of a writ of attachment upon lumber so manufactured; the complaint at law claiming some $3,000 as then due them from Gardner. The cause is argued here, consistent with the bill's averments, upon the theory that the appellees conceived they had for their services and labor the statutory lien provided by the act approved September 10, 1915 (Gen. Acts, p. 374). Not being "employees" or "laborers" under their contract with Gardner, the appellees were not within that act's purview; and being so advised, they, after levy of the writ of attachment, abandoned that theory of their right in the premises, and, by the court's permission or order, filed the present bill (later amended) upon the equity side of the circuit court to have declared and enforced a common-law lien upon the lumber.

[1] One who by his labor and service converts timber into lumber, thereby imparting an additional value to the product, has a common-law lien thereon. Arians v. Brickley, 65 Wis. 26, 26 N. W. 188, 56 Am. Rep. 611; 25 Cyc. pp. 661, 662; Alexander v. Mobile Auto Co., 300 Ala. 586, 76 South. 944.

[2] Possession is essential to the creation of a common-law lien; and "if," as was said long since in Voss v. Robertson, 46 Ala. 483, 487, the party claiming the lien "once part with the possession after the lien attaches, the lien is gone." Alexander v. Mobile Auto Co., supra; 25 Cyc. pp. 661, 662; Mobile, Building & Loan Ass'n v. Robertson, 65 Ala. 382, 390.

[3] To preserve the lien the possession must be continuous, since the essence of the lien is the right to retain possession until the just demand is satisfied. Authorities supra; 1 Jones on Liens (3d Ed.) §§ 20–22. "It [lien] merely secures the lienor in the possession of the property on which the lien attaches, to hold it as security for the debt or obligation, but not to sell it" (25 Cyc. pp. 661, 662)—thus stating the generally accepted doctrine.

[4] The lien results from implication of law, and the right it assures "rests on principles of natural equity and commercial necessity." 17 R. C. L. pp. 607, 608; Arians v. Brickley, supra; 1 Jones on Liens (3d Ed.) § 4. Such a lien cannot be implied if the engagements the parties have assumed in ' their contract are inconsistent with a lien by implication. 17 R. C. L. p. 607.

[5] While the parties to a contract may,

without preventing the creation of a common-law lien, stipulate for a fixed sum, yet, if the time or mode of payment stipulated by the contract' contemplates the asserted lienor's release or surrender of possession of the chattel before the period for stipulated payment arrives, a lien at common law does not come into existence. 17 R. C. L. pp. 607, 608; 1 Jones on Liens (3d Ed.) § 6; Wiles Laundry Co. v. Hahlo, 105 N. Y. 234, 11 N. E. 500, 59 Am. Rep. 496, 500; Stoddard v. Huntley, 8 N. H. 441, 31 Am. Dec. 198; Burdict v. Murray, 3 Vt. 302, 21 Am. Dec. 588; Hutchins v. Olcutt, 4 Vt. 549, 24 Am. Dec. 634; Chandler v. Belden, 18 Johns. (N. Y.) 157, 9 Am. Dec. 193; Steinman v. Wilkins,' 7 Watts & S. (Pa.) 466, 42 Am. Dec. 254, Freeman's note, p. 259.

[6] The contract, executed antecedent to the service contemplated between appellees, called therein "party of the second part," and Gardner, who was described as the "party of the first part," provided terms of payment inconsistent with a lien that otherwise might be implied by law. Among other things, the contract contained these provisions:

"Party of the second part agrees to manufacture into lumber all of the timber of the dimension named above in a workmanlike manner and to stack all such lumber that party of the first part may sell for dry shipment, and to trim all lumber in good merchantable shape and to haul all such product of the mill and load same on cars at Sand Mountain station on the Mobile & Ohio Railroad in Bibb county, Ala. Party of the second part agrees to begin cutting said timber within 90 days from the date of this contract, the daily capacity of the mill operated by party of the second part in cutting such lumber not to be less than five thousand feet per day. Party of the second part agrees not to allow said mill to cease operation until all of said timber on the above described land shall have been cut. * * *

"For cutting and hauling and loading and stacking such lumber party of the first part agrees to pay party of the second part the sum of $23 per thousand foot. It is agreed that the payments for green lumber shipped shall be every two weeks. For the lumber stacked party of the first part shall pay party of the second part the sum of $15 per thousand every two weeks after such lumber has been stacked, and the remainder to be paid within two weeks after such lumber has been shipped. * * *

"Copies of checking lists of lumber shipped and copies of invoices and number of cars and initials of car shall be furnished by party of the second part to the party of the first part."

It thus appears from the terms of the contract that appellees obligated themselves to operate the mill continuously (after 90 days from date of contract) at a daily capacity of not less than 5,000 feet, and to continue the operation until all of the timber on the specified land should be cut. It further appears that periodic payments, at fixed sums, for "cutting and hauling and loading and stacking," consequent upon the mill's continuous operation, should be "every two weeks"; the "hauling and loading," as provided in the paragraph first quoted, to serve the purpose and end of deposit on railroad cars, the appellees to "secure bills of lading for lumber shipped and to turn same over to party of the first part." It was also expressly provided in the contract that "all lumber, * * * all such product of the mill" should be hauled and loaded by the appellees on the cars in the process of shipment; the lumber for "dry shipment" to be stacked in a workmanlike manner. It is manifest from the terms of the contract that appellees' possible right to retain possession of the product or any part of it—the essence of the common-law lien claimed—to assure them the compensation stipulated, could not be recognized without ignoring provisions the parties expressly made for periodic payments, "every two weeks," for the service contemplated, and for the delivery by appellees of possession of the product to the common carrier for transportation. The stipulations with reference to periodic payments for the service, as well as with reference to appellees' expressly assumed obligation to load and ship, taking bills of lading from the carrier, and delivering them to the party of the first part, intended the release or surrender by appellees of the possession of the product of the mill before, and without regard to, the occurrence or recurrence of the periodic dates of payment. Our conclusion, therefore, is that a common-law lien in favor or in protection of these appellees did not come into existence; the contract's terms precluding a lien by implication of law. Hutchins v. Olcutt, 4 Vt. 549, 24 Am. Dec. 634, 636. The appellant's demurrer took this well-founded objection to the bill as amended; and for that reason it was error to overrule the demurrer.

Having reached the conclusion that no lien by implication of law existed, it is not necessary to consider the subsequent question, projected by appellant's demurrer, whether the appellees waived the lien asserted in the bill by having writ of attachment levied by the sheriff on the lumber.

The decree overruling the demurrer is reversed, and the cause is remanded.

Reversed and remanded.

ANDERSON, C. J., and SOMERVILLE and THOMAS, JJ., concur.