## Case No. 15,192.

### UNITED STATES v. GAUSSEN.

[2 Woods. 92.] [1]

Circuit Court, D. Louisiana. April Term, 1875. [2]

COLLECTOR OF CUSTOMS — BOND — ADDITIONAL DUTIES AND LIABILITIES—DELAY.

1. Where the condition of the bond of a collector of customs was that he should faithfully discharge the duties of his office according to law, the law referred to was any law that was on the statute book at the date of the bond, or that might be passed during the collector's term, prescribing the powers and duties of his office.

2. Where the duties and responsibilities of a collector of customs were changed by law subsequent to the execution of his official bond, but the nature and general duties of his office remained the same, the sureties on the bond remained liable.

[Cited in U. S. v. McCartney, 1 Fed. 107.]

3. Where duties not required by law to be performed by him were imposed on a collector by the superior officers of the treasury department. he was still required to discharge his duties according to law, and the sureties on his official bond were liable for his failure to do so.

4. Delay on the part of the government in enforcing its rights cannot be set up as a defense.

This cause was an action at law against [Bessie Elgee Gaussen,] the executor of one of the sureties on the bond of Thomas Barrett, late collector of customs. It was heard upon a motion of plaintiff's counsel to strike out

1 [Reported by Hon. William B. Woods, Circuit Judge, and here reprinted by permission.]
2 [Affirmed in 97 U. S. 584.]

two of the answers of defendant as insufficient in law.

[In this case there had been a judgment in the circuit court in favor of defendant. Case unreported. This judgment was reversed by the supreme court, and a new trial granted. 19 Wall. (86 U. S.) 198. The cause is now upon the second trial.]

J. R. Beckwith, U. S. Atty., for the motion.

W. H. Hunt, John Finney, and H. C. Miller, contra, cited De Colyer, Suretyship, 336; Pybus v. Gibb, 88 E. C. L. 910; Converse v. U. S., 21 How. [62 U. S.] 463; U. S. v. Shoemaker, 7 Wall. [74 U. S.] 338; U. S. v. Tillotson [Case No. 16,524]; U. S. v. Hilligas [Id. 15,366]

WOODS, Circuit Judge. This is an action brought on the official bond of Thomas Barrett, late collector of customs for the district of Louisiana against the defendants as executors of John K. Elgee, deceased, who was one of the sureties on the bond. It appears from the petition that Barrett was appointed collector on the 6th of July, 1844, and made his official bond of that date, in the penalty of one hundred and twenty thousand dollars with John K. Elgee and others, sureties, and conditioned as follows: "Now, therefore, if the said Thomas Barrett has truly and faithfully executed and discharged, and shall continue truly and faithfully to execute and discharge, all the duties of said office according to law, then the above obligation to be void; otherwise, it shall abide and remain in full force and virtue." The breach alleged is that Barrett, the principal, failed to account for and pay over the sum of $41,376.64, which was found to be due from him to the United States on the 12th day of October, 1845, on a statement of his accounts.

To the petition filed in this action, the defendant has answered, among other pleas, the following in substance:

(1) That subsequent to the date of the bond and during Barrett's term of office, the United States exacted from him the performance of duties and the assumption of responsibilities in regard to the receipt, custody and disbursement of moneys received by him as collector, different and varying from the duties and responsibilities in that regard legally incumbent upon him as collector, by the law in force at the date of the bond.

That during his said term, Barrett was relieved by the United States from the duty and obligation of paying out the public moneys in the mode required by law, and in lieu thereof was required by the United States to expend and disburse a large part of the public moneys received by him in payments to collectors and surveyors of other districts, for the construction of the new marine hospital and for the maintenance of existing hospitals, light houses, revenue vessels, etc., and for other purposes entirely beyond the scope of his duties as collector as fixed and defined by

law; that he was required by the United States to receive and disburse, and during his term did receive and disburse under said requirements, large sums of money which he was not required by law to receive and disburse as collector.

That in this manner the risks and responsibilities of Barrett as collector were, without the consent of the sureties, enlarged and changed by the United States subsequent to the execution of the bond; therefore the sureties are discharged.

(2) That in 1846, Barrett died, leaving a large estate, more than sufficient to pay the plaintiff's demand; that four other persons who were sureties on said bond have died, leaving large estates; that the United States were entitled to priority of payment out of all said estates for any claim they might have against Barrett on his bond, and that having neglected to enforce the demand for payment out of said estates, it has lost its right against them, and in consequence of this laches the liability of the defendant's testator is discharged.

The plaintiff pursuant to the practice which has been recognized as not improper in this state, now moves to strike out these answers as insufficient in law to bar the plaintiff's right of action.

I shall notice these defenses in their order:

1. When the condition of the bond sued on declares that Barrett "shall truly and faithfully discharge the duties of his office, according to law," it is clear that the law referred to is any law that was then on the statute book or that might be passed during the continuance of his term of office, regulating the powers and duties of his office. Otherwise, every increase in the rate of duties, every change in the manner of conducting the office, or rendering accounts or paying out the public money would discharge the bonds of all the collectors of customs holding under the government. The same would hold true of the bonds of the army of internal revenue collectors, postmasters, or other officers who have any duty to discharge in collecting or paying out the public money. The case of Postmaster General v. Munger [Case No. 11,309], was an action on a postmaster's bond. Acts of congress had been passed subsequent to the giving of the bond increasing the rates of postage, and consequently the responsibility of the sureties. But it was held that as the undertaking of the sureties was general, that all postages should be paid over, and referred to no particular act explaining or limiting the rate of postage, and was not taken under any law defining its extent and operation, the sureties were not discharged. So in Boody v. U. S. [Id. 1,636], it was held that the sureties on the bond of a postmaster are liable for his noncompliance with subsequent as well as past laws or orders till his official term expires, if the orders be such as are justified by law. In Pybus v. Gibb, 6 El. & Bl. 903, the plaintiff being high bailiff of the county court

of Northumberland, had appointed Gibb, one of the defendants, his bailiff, and the bond was by the bailiff and the other defendants, his sureties, conditioned to indemnify the high bailiff in respect of the conduct of the bailiff in office. Under color of a warrant against the goods of Edgar, Gibb the bailiff seized the goods of Thew, who recovered against the plaintiff, and the breach assigned was for not indemnifying the plaintiff against this. The plea by the sureties showed that the bond was executed when St. 9 & 10 Vict. c. 95, was the act regulating the county court; it alleged that several acts came into operation after the execution of the bond and before the breach complained of. On demurrer to the plea, Campbell, C. J., said: "The question is, whether the nature and functions of the office or employment are changed; for if they are, it is not the same office within the meaning of the bond. The condition of the bond was for the due execution by Gibb of his office as bailiff, according to St. 9 & 10 Vict. c. 95, not, be it observed, according to such acts of parliament as might be made respecting the office." And the acts passed since the execution of the bond having increased the jurisdiction of the court from £20 to £50, and in cases of consent of parties to any amount, and having conferred bankruptcy jurisdiction, and given power to arrest absconding debtors, the court held that the office of bailiff was substantially changed and the sureties no longer liable. It will be observed that this decision rested on the language of the bond, limiting the duties to be performed by the bailiff to those prescribed by a particular act, and that if the bond had been made for the due execution of the office according to law generally, the inference from the language of the court is that the bond would have been held good and binding on the sureties. See, also, People v. Vilas, 36 N. Y. 459.

The answer under consideration sets up three substantial facts as constituting a defense to this action:

(1) That the performance of duties and the assumption of responsibilities were exacted of Barrett different from those incumbent on him by the law in force at the date of the bond.

(2) That Barrett was excused from the obligation of paying out the public money in the mode required by law, and was required by the United States to disburse a large part of the public moneys received by him in payment, to other collectors, and in the construction of the new marine hospital, etc., and for other purposes beyond the scope of his duties as fixed and defined by law.

(3) That he was required to receive and disburse large sums which he was not required by law to receive and disburse as collector.

If the first branch of the answer under consideration means that the duties and responsibilities of Barrett were changed by law, subsequent to the execution of the bond, I am of opinion on the authorities cited, that the

sureties on the bond of Barrett were not discharged by any such change, for the reason that the condition of the bond in effect bound him to perform the duties of his office according to the law as it existed at the date of the bond, or might be changed by subsequent legislation.

Again, if the meaning of this part of the answer is as just stated, the answer is not good for another reason: the court takes judicial notice of the legislation of congress, and the court judicially knows that during Barrett's term of office there was no legislation of congress which in any way materially changed the duties or responsibilities of his office. But suppose the plea to mean that new duties and responsibilities were imposed upon Barrett during his term of office by his superior in the treasury department: These superior officers imposed these new duties upon Barrett as collector, either with or without the authority of law. If by authority, it follows from the terms of the bond that the defendant is bound; if without, these requirements could not affect his duties as collector. He is still bound to discharge his duties according to law, and if he fails in this, he and his sureties are liable upon his bond. If the officers of the treasury have imposed upon him duties not required of him by his office of collector, neither he nor his sureties are bound for any failure to discharge such duties. But his duties as collector still remain, and he is bound to discharge them, and he and his sureties are liable for his failure to do so. These remarks apply to the first and third branches of the plea.

The second part of the answer alleges that Barrett was excused from paying out the public money in the manner required by law, and was required to disburse it to collectors and surveyors of other districts for the marine hospital, light houses, and for other purposes beyond the scope of his duties as collector.

This part of the answer presents the question whether the disbursement, by a collector, on the authority of the United States, of public money for the payment of collectors and surveyors of other districts for the erection of the marine hospital for light houses and revenue vessels, were payments authorized by the law in force during Barrett's term of office.

During Barrett's term, the act of March 2, 1799, "to regulate the collection of duties on imports and tunnage" (1 Stat. 627), was in force. Section 21 of this act declares that "the said collector shall at all times pay to the order of the officer who shall be authorized to direct the payment thereof, the whole of the moneys which they may respectively receive by virtue of this act." Now it does not appear by the answer under consideration that Barrett was required to pay out, or did pay out, any of the public moneys, except in the manner pointed out in this section. For what purpose they were paid out is entirely immaterial, provided they were paid to the order of the officer who should be authorized to direct the payment.

During Barrett's term of office, there was no law in force establishing an independent treasury for the United States. As soon as public dues were paid to a collector of customs they were, to all intents and purposes, in the treasury, and were subject to the order of the proper officer of the treasury. It is a mistaken idea to suppose that, before the enactment of the independent treasury act, a collector of customs could pay over the public money in his hands in only one way, and that by transmission to the treasury. "The duties of collectors of customs," says the supreme court of the United States, in Broome v. U. S., 15 How. [56 U. S.] 157, "have been much multiplied by other acts since the act of 1799 was passed. Scarcely an act, and no general act has been passed since, concerning the collection of duties upon imports and tunnage, without some addition having been made to the collector's duties. They are suggested from experience. The collector too has always been a disbursing officer for the payment of the expenses of his office, and may pay them out of any money in hand, whether received from duties or remittances for that purpose, when the expenses are not unofficial, have been sanctioned by law, and have been incurred by the direction of the secretary of the treasury. For such payments he may credit himself in his general account against the sums which may have been received for duties. He may retain his own salary or fees and commissions; pay the salaries of inspectors and other officers attached to the office; make disbursements for the revenue boats, light houses, buoys, etc., and apply money collected for duties to all expenses lawfully incurred by himself or his predecessors. * * * It has often been the case, and must be so again, as it is now, that the convenience of the government and the interest of its citizens require collection districts to be established which do not and are not expected at first to pay expenses. Remittances then must be made for such purposes. They are made to the collector, because it is under his personal supervision that the work is done or the goods are furnished for the government at the point of his office where the law requires him to reside." See, also, Converse v. U. S., 21 How. [62 U. S.] 463.

I am of opinion therefore that if the averments of the second branch of the answer were true, it would not discharge the bond of Barrett.

My conclusions are as follows:

1. That the collector was bound by the condition of his bond to discharge the duties of his office according to the law as it existed at the date of the bond or might during his term be changed by subsequent legislation.

2. That no change made by law in the rate of duties, the routine of the office, or in the method of conducting it, which did not change materially the character of the office, would

discharge the sureties on the official bond of the collector.

3. That there was no legislation during Barrett's term which either changed the nature of his office or duties, or the method of performing his duties.

4. That everything alleged in the answer, as required by the United States to be done by him, was authorized by law at the date of the bond.

As the result of these conclusions, it follows that the answer under consideration is not well pleaded, sets up no good defense to the action, and must be stricken out.

As to the third answer, setting up laches on the part of the plaintiffs in prosecuting their claim, it is sufficient to say: "Nullum tempus occurrit regi." See Dox v. Post Master Gen., 1 Pet. [26 U. S.] 318.

The motion to strike out both answers, as insufficient in law, must prevail.

[A writ of error was subsequently sued out, by the defendant from the supreme court, where the judgment entered in this case was affirmed. 97 U. S. 584.]