### NATIONAL SURETY CO. v. UNITED STATES.

(Circuit Court of Appeals, Eighth Circuit. March 21, 1904.)

No. 1,936.

1. **BOND OF LETTER CARRIER—LIABILITY OF SURETY—COLLECTING LETTERS TO BE REGISTERED.**

The bond of a letter carrier and of his surety for the faithful discharge of the duties and trusts imposed upon the former as a letter carrier, "either by the postal laws of the United States or the rules and regulations of the Post-Office Department of the United States," binds the surety for the faithful discharge by his principal of the duty of collecting letters and packages to be registered which was imposed upon the letter carrier by an order of the Post-Office Department during the term of the bond.

2. **SAME—CONSTRUCTION—ACCORDING TO LAWS AND REGULATIONS.**

The parties to a bond for the faithful discharge of the duties of an office according to laws and regulations, which the obligee has the right and power to change at any time, necessarily contemplate and intend to guaranty thereby the discharge of the duties of the office imposed upon the principal by the subsequent legislation or regulation of the obligee during the term of the bond, which are within the scope of the office, and are germane to, and naturally connected with, its duties when the bond is made. They do not warrant or intend to guaranty the discharge of duties beyond the scope of the office, disconnected with its business or foreign to its duties at the time of the execution of the bond.

3. **SAME—DUTY OF COLLECTING LETTERS TO BE REGISTERED GERMANE TO FORMER DUTIES.**

The duty of collecting letters and packages to be registered imposed upon letter carriers by the order of the Postmaster General of December 5, 1899, is within the scope of the office of a letter carrier, and germane to previous duties pertaining to it.

4. **SAME—UNITED STATES MAY RECOVER OF SURETY FOR THEFT BY PRINCIPAL— BAILEE FOR HIRE.**

The United States may maintain an action against the surety on the bond of a letter carrier who has stolen letters to be registered for the value

---

¶ 1. Liabilities of sureties for acts of officers under color of office, see note to Chandler v. Rutherford, 43 C. C. A. 222.

¶ 4. See Bailment, vol. 6, Cent. Dig. §§ 98–100, 136.

of the contents of the stolen letters, where the contents of no single letter exceeded $10 in value, although the owners of the letters have made no claim against the government for indemnity, and nothing has been paid to them.

A bailee for hire of services may maintain an action of trespass, trover, or conversion for the disturbance of his possession by a wrongdoer, and may recover the value of the property as damages.

(Syllabus by the Court.)

In Error to the District Court of the United States for the District of Nebraska.

Ralph W. Breckenridge (Charles J. Greene and James C. Kinsler, on the brief), for plaintiff in error.

W. S. Summers and S. R. Rush, for the United States.

Before SANBORN, THAYER, and HOOK, Circuit Judges.

SANBORN, Circuit Judge. On April 1, 1899, 79 letter carriers at the city of Omaha in the state of Nebraska, as principals, and the National Surety Company, as their surety, gave a bond to the United States in the sum of $79,000, conditioned that if each of the principals "shall faithfully perform all the duties and trusts imposed upon him as such letter carrier either by the postal laws of the United States or the rules and regulations of the post-office department of the United States and shall faithfully account for and pay over to the postmaster at Omaha, Nebr., all moneys which shall come into his hands as such letter carrier, and shall, upon the termination of his office, return to the proper officer all property of every kind and description which shall be in his possession as such letter carrier," then the obligation should be void, but otherwise of force. At the time this bond was executed these letter carriers were forbidden to collect or receive letters or packages to be registered, but it was a part of their duties to deliver registered mail, and to collect and deliver other letters and packages. Postal Laws & Regulations 1893, § 1049. In December, 1899, the Postmaster General made an order to the effect that letter carriers in the residential districts of certain cities, one of which was Omaha, should collect certain letters to be registered. Order No. 762, Dec. 5, 1899; Postal Laws and Regulations 1902, § 805. Under this order, John Eich, one of the principals in the bond, collected three letters to be registered, which contained, respectively, $6, $3.50, and $1.50, and rifled them of their contents. The United States has made no restitution of any of this money to either of the senders or addressees of the letters. It has, however, brought this action against the surety company to recover the $11 which the letters contained, and a judgment for that amount has been entered in its favor, pursuant to a peremptory instruction to the jury, that the plaintiff was entitled to their verdict.

The peremptory instruction of the court, and the judgment which followed it, are challenged in this court upon two grounds: (1) That the imposition of the duty of collecting letters and packages to be registered, upon the principal, Eich, after the bond in suit was given,

added to the duties of the office of the letter carrier a new duty and a new responsibility, for which the surety was not liable upon its bond; and (2) that the United States is entitled to no recovery in any event, because it has neither incurred any liability, nor suffered any loss, by the theft of the money by the principal in the bond.

The agreement of a surety must be strictly construed. His responsibility may not be extended by implication beyond the terms of his bond. An additional liability, which his contract does not clearly show to have been within the reasonable contemplation and intention of the parties to it when it was made, cannot be imposed upon him by the subsequent action of the obligee or of the principal in the bond. Miller v. Stewart, 9 Wheat. 680, 701, 6 L. Ed. 189; U. S. v. Singer, 82 U. S. 111, 122, 21 L. Ed. 49.

But the contract of a surety, like all other contracts, must have a reasonable construction—an interpretation, which, while it carefully restricts his responsibility to that which he agreed to undertake, does not fail to hold him to that liability which, by the plain terms of the agreement, he contracted to assume. The surety in the case in hand agreed with the United States to be liable for the faithful discharge by its principal, Eich, of all the duties and trusts imposed upon him as a letter carrier either by the postal laws of the United States, or by the rules and regulations of the Post-Office Department of the nation. When this bond was executed the United States had the right and power, by act of Congress, and the Postmaster General had the right, by rule or order, to increase, diminish, or modify the duties of the principal in this bond, as a letter carrier, at any time they saw fit; and all the parties to this contract were aware of this fact. The proposition has become too well settled to admit of discussion that an obligation of a surety for the faithful discharge of the duties of an office according to the laws and regulations which prescribe those duties, made to one who has the right and power to change such laws and regulations at any time, is, in its true interpretation and meaning, a contract for the faithful discharge of the duties of the office according to the laws and regulations, not only as they are at the time when the bond is made, but also as they shall subsequently become during the term of the bond, provided only that subsequent legislation or regulation adds no new duty or responsibility which is not germane to the duties or within the scope of the office at the time of the making of the bond. All duties prescribed by subsequent legislation or regulation which are of the same kind as those previously pertaining to the office, which are within its scope and which naturally belong to its business, are within the reasonable contemplation and evident intention of the parties to such a contract, because they know the necessity and probability of changes in the duties of the office, and the bond binds principal and surety alike for their faithful discharge. U. S. v. Singer, 82 U. S. 111, 122, 21 L. Ed. 49; U. S. v. Powell, 81 U. S. 493, 500, 20 L. Ed. 726; U. S. v. Gaussen, 25 Fed. Cas. 1267, 1269, No. 15,192; Postmaster General v. Munger, 19 Fed. Cas. 1099, 1103, No. 11,309; Boody v. U. S., 3 Fed. Cas. 860, 864, No. 1,636; White v. Fox, 22 Me. 341, 347; U. S. v. McCartney (C. C.) 1 Fed. 104, 106, 111; Chadwick v. U. S. (C. C.) 3 Fed. 750, 755; King v. Nichols, 16 Ohio St.

82; U. S. v. Cheeseman, 25 Fed. Cas. 414, No. 14,790; Murfree on Official Bonds, §§ 711, 712, 713.

When this bond was executed the collection and distribution of letters and packages which were not registered, and which might nevertheless contain money or other articles of value, and the distribution of registered letters and packages, were some of the duties of the principal as a letter carrier. The collection of letters and packages to be registered was a duty of the same kind as the duty of the distribution of registered letters and packages. It was a duty within the scope of and naturally connected with the business of the office. Hence the liability of the surety for its discharge falls within the true interpretation of its obligation to answer for the faithful discharge of the duties of its principal according to the laws and regulations which prescribe them.

The second objection to the judgment is that the United States has neither incurred any liability nor suffered any loss by the theft of the contents of the letters, and hence it cannot maintain an action for damages on account of it. In support of this contention, attention is called to the fact that section 3926 of the Revised Statutes [U. S. Comp. St. 1901, p. 2685] provides that the Postmaster General shall make rules under which the owners of first-class registered matter shall be indemnified by the United States for losses thereof through the mails, to amounts not exceeding $10 for any one registered piece; that such rules have been prescribed; that these rules require that claims for indemnity shall be made within one year from the dates of the losses (Postal Laws & Regulations 1902, § 900); that there is no averment or proof that any claim for indemnity for the loss of any of the moneys here in question has ever been made; and that the government admits that it has never paid anything to any one on account of it. The right of the nation, however, to a recovery in this action, is not necessarily limited by the acts or omissions of the owners of the stolen money since the theft. It depends upon the facts and circumstances when the money was stolen. When this was done, the money was in the custody—the possession—of the United States under its contract with those who had intrusted the letters to its care to safely carry and deliver them to their addressees for the valuable consideration which it had received by virtue of the stamps upon the letters which had been purchased from it. The contract between the United States and the owners of the letters was a bailment of the class known as "locatio operis mercium vehendarum." It was a carrier—a bailee of the letters and their contents for hire of labor or services. From this carrier or bailee Eich took and converted the letters and their contents to his own use. But a bailee may maintain an action of trespass, of trover, or of conversion against a wrongdoer for his disturbance of his possession of the property. The Beaconsfield, 158 U. S. 303, 307, 15 Sup. Ct. 860, 39 L. Ed. 993; The New York (D. C.) 93 Fed. 495, 499; Shaw v. Kaler, 106 Mass. 448; Eaton v. Lynde, 15 Mass. 242; Burdict v. Murray, 3 Vt. 302, 21 Am. Dec. 588. The United States, therefore, was not without sufficient interest in the subject-matter to enable it to recover of Eich, the letter carrier, the entire value of the property he took, as its damages for the conversion of the money. But Eich converted the

letters and their contents when he was in the act of performing his duty of collecting and delivering them to the postmaster at Omaha, and when he and the surety company were under an agreement with the plaintiff that they would pay all damages, not exceeding $1,000, which resulted to it from Eich's failure to discharge his duties faithfully, and to account and pay over to the postmaster all moneys which should come into his hands as a letter carrier. Since the government was entitled to recover the value of the letters as its damages for their conversion, this value was also the measure of the damages it sustained under the bond, and a cause of action against the obligors in the bond to recover these damages arose as soon as the theft of the letters was completed. As soon as the conversion was effected, the United States had a complete right of action against the obligors upon the bond for the value of the property taken by the principal, and each of the respective owners of the letters had an indefeasible claim against the government for the value of the contents of his letter. The right of action of the United States, however, was not conditioned, created, released, or affected by the fact that the owners of the letters presented or failed to present their claims for indemnity to the government, and this fact constituted no defense to this action.

The judgment below must accordingly be affirmed, and it is so ordered.