## UNION PAC. R. CO. v. UNITED STATES.

(Circuit Court of Appeals, Eighth Circuit. January 4, 1915.)

### No. 4174.

1. Post Office ⊙⟹21—Transportation of Mail—Liability of Carrier—Negligence of Servants.

A railroad carrying the mails under a contract by which, for a consideration, it agreed to perform the service under the conditions prescribed by law and the regulations of the department, cannot claim exemption from liability to the United States for the loss of mail equipment in a wreck caused by the negligence of its servants on the ground that it was engaged in performing a governmental function, and therefore not liable for the negligence of its servants, if it used proper care in selecting them.

[Ed. Note.—For other cases, see Post Office, Cent. Dig. §§ 27–39; Dec. Dig. ⊙⟹21.]

2. Post Office ⊙⟹21—Transportation of Mail—Liability of Carrier—Settlement.

Where the Post Office Department, after having full knowledge of the facts, deducted from the compensation of a mail carrier a penalty for the loss and damage to mail and equipment in a wreck, under the provisions of Rev. St. § 3962 (Comp. St. 1913, § 7450), authorizing the Postmaster General to make deductions from the pay of mail contractors, and to impose fines upon them for failure to perform the service and other delinquencies, and Postal Regulations, § 1335, authorizing the imposition of such fine for permitting the mail to be wet, lost, injured, or destroyed, such deduction is a full settlement of all claims by the United States for any loss from the wreck, including a claim for the value of the registered mail destroyed thereby.

[Ed. Note.—For other cases, see Post Office, Cent. Dig. §§ 27–39; Dec. Dig. ⊙⟹21.]

3. Jury ⊙⟹37—Right to Jury Trial—Directing Judgment for Reversal.

The Circuit Court of Appeals cannot, on reversing a judgment on a verdict directed for plaintiff on the ground that it should have been directed for defendant, enter judgment for the defendant, but must remand the case for a new trial to conform to Const. Amend. 7, providing that no fact tried by a jury shall be otherwise re-examined in any court of the United States than according to the course of the common law.

[Ed. Note.—For other cases, see Jury, Cent. Dig. § 220; Dec. Dig. ⊙⟹37.]

In Error to the District Court of the United States for the District of Utah; John A. Marshall, Judge.

Action by the United States of America against the Union Pacific Railroad Company. Judgment for the plaintiff, and defendant brings error. Reversed, and new trial ordered.

This action was brought June 4, 1912, by the United States against the railroad company, to recover damages for the loss of registered mail and mail equipment alleged to have been destroyed through the negligence of the company. At the trial the facts were agreed upon.

Counsel for the United States moved for a directed verdict, and counsel for the railroad company did likewise. The trial court directed a verdict for the United States in the sum of $5,788.05, and denied the motion of the railroad company. This action of the court is assigned as error. The facts material to the disposition of the case in this court are as follows:

Registered mail of the value of $5,402.48 and mail equipment belonging to

⊙⟹For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

the United States of the value of $385.57 was destroyed in a wreck on the line of the railroad company in Wyoming December 7, 1905. The circumstances under which the wreck occurred are as stated by the general superintendent of the railroad company, W. L. Park, in a letter to Post Office Inspector Durand, dated April 7, 1906. The letter reads as follows:

"Dear Sir: I have your letter of April 4th, with reference to case 57,931D, and in reply would state that Extra West 1,658, Conductor Darrell, Engineer Brink, received order No. 64 at Wamsutter, running four passenger trains (Nos. 1st and 2d 10, 6 and 2) on the same schedule. These trains were delayed west of Green River by an accident of some kind, coming in there together and departing about ten minutes later. Later the dispatcher gave this train, Extra 1,658, an order giving them time order specifying that the train would run one hour and forty minutes late on order No. 64, which enabled them to reach Rock Springs. At this point they received order No. 89 specifying that the trains in question would run two hours late, which enabled them to go (—) Ah Say for these trains. After stopping at the west end of the side track the conductor washed up and sat down at his desk to make out his tonnage reports; shortly after this the 1st 10 passed; ten minutes thereafter the 2d 10, and thirteen minutes later No. 6. When No. 6 passed the engineer of the freight train whistled off brakes and started to pull out; the conductor went to the door of the caboose and remarked to the rear brakeman: 'That is not No. 2'—identifying train by absence of observation car which is on No. 2. The conductor then said to the brakeman that they must have run No. 2 around No. 6 and allowed engineer to proceed. They left Ah Say at about 2:25 a. m., consumed five minutes getting out of the side track and shutting the switch, and at about 2:43 a. m. struck No. 2 on curve, west of Ah Say pump house. Engineer Brink must in some way have miscounted, and the others, relying on him, were also led into the fatal error. In the subsequent investigation it was found that every rule of the operating department had been complied with so far as the handling of the train orders were concerned; we had also just completed a series of examinations of every train and engine man on the system, covering all the rules and regulations of the operating department. Conductor Darrell had always been considered a competent conductor; had been on this division for many years; was exceptionally loyal to the company; and was considered by the superintendent to be one of his best conductors. Engineer Brink was also considered to be an efficient employé by all the mechanical and operating departments. Both engineer and conductor were men of good habits and highly respected by their fellow men. From the evidence given, the freight engineer undoubtedly discovered the passenger train coming first and shut off as steam from the relief valves rose in front of his headlight, obscuring it to some extent from engineer of passenger train. The fireman on the freight train saw No. 2 coming, as did also the brakeman. They both got down on deck of engine, the fireman got down on the steps, facing the engine, and when he jumped brakeman was still standing in the gangway and engineer was sitting on his seat, probably manipulating his air. Engineer on No. 2 did not leave his engine; the fireman was engaged in putting in fire, and did not see the approaching freight train at all."

The stipulation of facts continues as follows:

"(1) That prior to the times mentioned herein there had been duly established, by authority of the Post Office Department of the United States, a postal route known and designated as postal route No. 157,001 from U. P. transfer (N. O.) to Ogden, Utah. That on, to wit, the 15th day of September, A. D. 1902, there was in effect a contract between the plaintiff and the defendant herein for the carriage by the defendant of the United States mail over and upon said postal route No. 157,001 from U. P. transfer (N. O.) to Ogden, Utah, the same being for the period from July 1, 1902, to June 30, 1906. That subsequently, and at the expiration of said contract, another contract for the same route between the same points was entered into by and between the parties hereto, for the carriage of United States mail matter by the defendant over the route aforesaid, the same extending from July 1, 1906, to July 30, 1910. That thereafter another contract was entered into by and be-

tween the parties hereto for the carriage of United States mail matter by the defendant over the route above described and numbered, extending from July 1, 1910, to June 30, 1914, which said contract is still in effect. * * * That the carriage and transportation of United States mail in the trains of this defendant, and over the aforesaid postal route No. 157,001, between Council Bluffs, Iowa, and Ogden, Utah, at all times since the 30th day of June, 1902, up to and including the present time, was and has been by virtue of and in accordance with the aforesaid contract, and the designation and adjustment of pay therein set forth, and not otherwise, or at all.

"(2) That the collision between the stations of Wilkins and Ah Say, in the state of Wyoming, on the lines of this defendant, on the 7th day of December, 1905, between defendant's east-bound passenger train, known and designated as train No. 2, and a certain west-bound freight of the defendant, designated as Extra 1,658, occurred and took place, and the loss, damage, and destruction of registered mail matter and equipment involved in this action occurred and took place while and during the term, existence, continuance, and performance of the aforesaid contract, and designation and adjustment of pay for the carriage of said mail of June 30, 1902.

"(3) That at the time and place of said collision there was attached to said east-bound passenger train No. 2, and being hauled in said train, under and by virtue of the contract aforesaid, post office car of the United States, known and designated by the United States as Cheyenne and Pocatello Railway Post Office. That said post office car was then and there being conducted and operated by the Post Office Department of the United States, and that said post office, car, and the contents thereof, were in the sole and exclusive charge, custody, and control of the said Post Office Department of the United States. That the letters and packages therein contained were inclosed in government mail bags or other receptacles, secured by locks provided by the United States, taken in charge by agents and employés of the government in said car. That said car was of the kind and character designated, prescribed, and required by the general government. That all mail matter therein contained was handled by government agents in said car, and by them delivered or to be delivered to other agents of the government for transmission or delivery to the addressees. That the mailable matter was at all times in charge of government agents and appointees. That the defendant herein had no knowledge of the contents of any of the said mail sacks, and had no authority or right to control these sacks, except to obey the instructions of the Post Office Department, if any; and in the transportation of said post office car and its contents the defendant herein had nothing to do with the car or its contents, except to haul said car in said train over said mail route."

Thereafter the following correspondence was had between the parties:

"Case No. 57,931–D

"Post Office Department.

"Office of Inspector in Charge, Denver Division—Arizona, Colorado, New Mexico, Utah, Wyoming.

"J. R. Harrison, Inspector in Charge.

"Denver, Colorado, September 4, 1907.

"Mr. H. P. Thrall, Supt. Mail Service, Union Pacific R. R., 135 Adams St., Chicago, Ill.—Sir: The above-numbered case relating to the wreck of your Cheyenne-Pocatello R. P. O. Tr. 2, at Wilkins, Wyoming, December 7, 1905. The investigation of this case has established that the wreck in question was due to the negligence of A. E. Brink and Roy Darrell, the engineer and conductor, respectively, of a west-bound freight train. As a large number of registered letters were destroyed in this wreck, I have decided to make a demand upon your company for the amount of the losses sustained by the senders of the above-mentioned registered letters. Investigation has established that there were several hundred registered letters destroyed that contained nothing of value, or that contained notes, etc., that could be duplicated without cost to the sender. Such cases have been returned to the department for closing without further action. The investigation of the remaining cases has necessarily proceeded very slowly, as many of the letters were mailed in

Guam, Pago Pago and Hawaii. Matters were further complicated by the San Francisco disaster, so that I have not yet completed the investigation of all the cases that bear upon this wreck. I have on hand approximately four hundred cases, the investigation of which will be completed as soon as possible, and you will then be furnished with an itemized statement of the contents of these letters. I have completed the investigation of six hundred and thirteen (613) and inclose herewith as Exhibit A, an itemized statement that shows the contents of each registered letter, the number of the letter, the names of the offices of mailing and of address, and the names of the sender and the addressee. As the amount of the losses in these six hundred and thirteen cases is $6,970.48, I hereby make demand upon your company for the above-mentioned sum. The value of the contents of each of the above-mentioned six hundred and thirteen registered letters has been determined by securing from the sender a sworn statement of the facts. In the event that you desire to verify the proofs in these cases, I shall be pleased to extend to you an opportunity to examine the papers in any or in all of these six hundred and thirteen cases. If you cannot arrange without inconvenience to come to Denver, it is possible that the papers could be brought to Chicago, Ill., for the purpose of giving you an opportunity to examine them. I have addressed this demand for $6,970.48 for the value of six hundred and thirteen registered letters to you on the assumption that your company will refer the matter to you so that time will be saved by sending the demand direct. The demand for the value of the contents of the remaining letters will be forwarded as soon as practicable. In the event that this demand is refused I will thank you to have such letter of refusal signed by some officer of your company that is authorized to bind the company in such matters, if you are not so authorized. Please advise me of your decision in the matter as soon as practicable.

"Yours respectfully, [Signed] J. R. Harrison, Inspector in Charge."

"H. P. Thrall, Mail Traffic Manager, 112 W. Adams Street, Chicago, Ill.

"November 6, 1907.

"Mr. J. R. Harrison, Post Office Inspector in Charge, Denver, Colorado—Dear Sir: Referring to your letter of September 4, 1907, making demand through this office upon the Union Pacific Railroad Company for the sum of $6,970.48, alleged value of certain registered letters claimed to have been destroyed in the wreck of the Union Pacific train 2 near Wilkins, Wyoming, December 7, 1905. In reply I beg to advise that I am authorized to inform you that this claim is respectfully declined.

"Very respectfully, [Signed] H. P. Thrall."

"Case No. 57,931—D. L. E. B.

"Post Office Department.

"Office of the Inspector in Charge, Denver Division—Arizona, Colorado, New Mexico, Utah, Wyoming.

"W. E. Cochran, Inspector in Charge.

"Denver, Colorado, March 17, 1909.

"Mr. H. P. Thrall, Mail Traffic Manager, Union Pacific R. R., Chicago, Ill.—Sir: This case related to the wreck of your Cheyenne and Pocatello R. P. O. train 2, near Wilkins, Wyoming, on the morning of December 7, 1905, in which a large number of registered letters and parcels were destroyed. Under date of September 4, 1907, Mr. J. R. Harrison, post office inspector in charge, addressed a letter to you in which he set forth the facts as established in the investigation of this case and made a demand upon your company for the sum of $6,970.48, representing the value of six hundred and thirteen registered letters and parcels destroyed in the wreck, and stated in his letter that another demand would be made as soon as the investigation of the remaining cases could be completed. As Mr. Harrison has been transferred from this division, I have been instructed by the department to make another demand upon your company, such demand to include the value of the remaining registers destroyed in this wreck which were not included in the previous demand. This demand is based upon the fact that the wreck

was caused by the negligence of the employés of your company, A. E. Brink and Roy Darrell, the engineer and conductor, respectively, of the west-bound freight train that collided with the mail train. Demand is hereby made upon your company for the total sum of $11,847.09, which includes the value of the registers mentioned in the previous demand. In the event you desire to verify the proofs in these cases, I shall be pleased to extend to you, or any of your representatives, an opportunity to examine the papers in any and all of the cases. It has been impracticable to complete the investigation at an earlier date, as many of the letters were mailed to foreign countries or the senders removed to foreign countries. If this demand is refused kindly advise me of that fact as soon as practicable.

"Very respectfully,     [Signed] W. E. Cochran, Inspector in Charge."

"H. P. Thrall, Mail Traffic Manager, 112 West Adams St.

"Chicago, Ill., March 22, 1909.

"Mr. W. E. Cochran, Post Office Inspector in Charge, Denver, Colo.—Dear Sir: I beg to acknowledge the receipt of your letter of the 17th inst. making demand upon the Union Pacific Railroad Company for $11,847.09, which includes $6,970.48 demanded by Inspector J. R. Harrison, October 4, 1907. It is understood that the amount you demand is the alleged value of certain registered mail claimed to have been destroyed in wreck of Union Pacific train 2 near Wilkins, Wyoming, December 7, 1905. In reply I beg to advise that I am authorized to inform you that this claim is respectfully declined.

"Very respectfully,      [Signed] H. P. Thrall."

"57,931—L. Case No. 180,191—A et al.

"Post Office Department.

"Office of Inspector in Charge, Denver Division—Arizona, Colorado, New Mexico, Utah, Wyoming.

"W. E. Cochran, Inspector in Charge.

"Denver, Colo., July 19, 1909.

"Mr. H. P. Thrall, Mail Traffic Manager, Union Pacific R. R. Co., 135 Adams St., Chicago, Ill.—Sir: Under date of March 17, 1909, this office made demand upon your company for the sum of $11,847.09, under our case No. 57,931—D. which represented the value of registered mail matter destroyed in the wreck of your Cheyenne and Pocatello Railway Post Office, train 2, near Wilkins, Wyoming, on the morning of December 7, 1905, as shown by the investigation of cases completed to that date. Since March 17, 1909, this office has completed the investigation of seven additional cases relating to seven registers destroyed in the above-mentioned wreck, the total loss in these seven cases being $36.25. In accordance with instructions received from the department, another demand is hereby made upon your company for the sum of $36.25, to cover the loss in these seven cases. Your early reply will be appreciated.

"Very respectfully,      [Signed] H. G. Durand,

"Actg. Inspector in Charge."

"H. P. Thrall, Mail Traffic Manager, 112 West Adams St.

"Chicago, July 21, 1909.

"Mr. W. E. Cochran, Inspector in Charge, Denver, Colo.—Dear Sir: I beg to acknowledge the receipt of your letter of the 19th inst. making demand upon the Union Pacific Railroad Company for $36.25, which is in addition to your previous demand of $11,847.08, account of alleged loss of registered mail in wreck of Union Pacific train 2 near Wilkins, Wyoming, December 7, 1905. In reply I beg to advise that I am authorized to inform you that this claim is respectfully declined.

"Very respectfully,      [Signed] H. P. Thrall."

"H. P. Thrall, Mail Traffic Manager, 112 W. Adams St. Chicago, Illinois.

"July 8, 1910.

"Chief Post Office Inspector, Post Office Department, Washington, D. C.—Dear Sir: On December 7, 1905, Union Pacific train 2 (Cheyenne and Pocatello R. P. O.) was wrecked near Wilkins, Wyoming, and about one thousand

pieces of registered matters was destroyed by fire. Demands were made upon the company by Inspectors Harrison and Cochran for a total of $11,883.34, alleged value of the lost registered mail, see your case No. 57,931—D. If consistent, will you kindly advise me of the total amount of the Post Office Department's liability in this case—see section 900, P. L. & R.; also the total number of registered pieces involved in this liability.

"Respectfully,                                    [Signed]  H. P. Thrall."

"Wilkins, Wyoming, Wreck of Mail Train December 7, 1905.

"Post Office Department.

"JRC—OAW

"Office of Chief Inspector, Washington.

"Case No. 57,931—D                                    July 8, 1910.

"Mr. H. P. Thrall, Mail Traffic Manager, 135 Adams St. Chicago, Ill.—Sir: Receipt is acknowledged of your letter of July 8, 1910, requesting to be advised of the total amount of the Post Office Department's liability in the above-numbered case, which relates to the wreck of the mail train at Wilkins, Wyoming, December 7, 1905, and the total number of registered pieces involved in the wreck. This case is being handled in accordance with section 157½, as amended, Supplement of 1907, Postal Laws and Regulations of 1902, a copy of which is transmitted herewith, and information about the case cannot be given pending the adjustment.

"Respectfully,                                    [Signed]  Theo. Ingalls,

"Acting Chief Inspector, T. J."

"Division of Inspection, Post Office Department.

"Second Assistant Postmaster General.

"Address reply to this office, division of inspection, and refer to files No. 6,762—13.

"Washington, D. C., May 6, 1910.

"Sir: This office is in receipt of information to the effect that the wreck of Cheyenne and Pocatello R. P. O. train 2, near Wilkins, Wyo., route 157,001, U. P. Transfer (N. O.) Iowa, to Ogden, Utah, December 7, 1905, a quantity of mail and equipment was lost and damaged. Any statement the company may submit in connection with the matter will be given due consideration. If it should appear from all the evidence at hand when the case is passed upon that the Union Pacific R. R. Co. is at fault, a (di-ciplinary) fine will be imposed.

"Very respectfully,                                    [Signed]  Joseph Stewart,

"Second Assistant Postmaster General.

"Mr. H. P. Thrall, Mail Traffic Manager, U. P. R. R. Co., 135 Adams St. Chicago, Ill."

"H. P. Thrall, Mail Traffic Manager, 112 West Adams St., Chicago, Ill.

"June 10, 1910.

"Hon. Joseph Stewart, Second Assistant Postmaster General, Washington, D. C.—Dear Sir: In reply to your letter of May 6, 1910 (LVBM) file 6,762—13, regarding loss and damage to a quantity of mail and equipment in the wreck of Union Pacific train 2 near Wilkins, Wyoming, December 7, 1905, I beg to state that this loss was due to an accident which was unavoidable so far as the Union Pacific Railroad Company was concerned.

"Respectfully,                                    [Signed]  H. P. Thrall."

The stipulation of facts again continues as follows:

"(5) That under date of April 5, 1906, through the office of the Second Assistant Postmaster General of the United States, notice was sent to this defendant stating that the sum of one hundred fifteen and 52/100 dollars ($115.52) had been deducted from the pay of the defendant company for the quarter ending March 31, 1906, for the carriage of mail on route No. 157,001, for 'failure to perform service, train 2, Wilkins, Wyoming, to Council Bluffs, 817.64 miles, December 6, 1905.' * * *

"(6) That under date of July 1, 1910, a notice was received by H. P. Thrall, mail traffic manager of the defendant herein, at Chicago, Illinois, from the office of the Second Assistant Postmaster General of the United States, division of inspection, stating that there had been deducted from the pay of the defendant company for the month of June, 1910, for the carriage of mail on route No. 157,001, the sum of three thousand dollars ($3,000), 'because of the loss of and damage to mail and equipment in the wreck of Cheyenne and Pocatello R. P. O. train No. 2 near Green River, Wyoming, December 7, 1905.' * * *

"(7) That the sum of one hundred fifteen and $52/100$ dollars ($115.52) was deducted from the pay due under and by virtue of the terms of the contract covering the period from July 1, 1902, to June 30, 1906; and the sum of three thousand dollars ($3,000) was deducted from the pay of the defendant company for the carriage of United States mail that accrued for the month of June, 1910, under and by virtue of the contract then existing between the plaintiff and defendant, covering the period from July 1, 1906, to June 30, 1910.

"(8) That on, to wit, July 8, 1910, the plaintiff herein issued to the defendant on its Post Office Department settlement warrant No. 1,077, and paid to this defendant the sum of one hundred twenty-seven thousand three hundred ninety and $64/100$ dollars ($127,390.64), in payment for the transportation of mail over route No. 157,001, during the month of June, 1910, which sum was the difference between the total amount due the defendant from the month of July, 1910, for the carriage of mail over the aforesaid route by virtue of the contract between the parties hereto of July 1, 1906, for the earnings of said mail, and the three thousand dollars ($3,000) deduction above set forth."

The letters which notified the company of the deductions said that the deductions were made in pursuance of authority conferred by section 3,962, R. S. U. S.

"(9) That the said deduction of three thousand dollars ($3,000.00) above set forth has, ever since the same was made, been retained by the plaintiff herein.

"(10) That at the time of the destruction of the mail matter involved herein, to wit, December 7, 1905, the indemnity provided for by the rules and regulations of the Post Office Department of the United States, made in accordance with authority of law, did not exceed the sum of twenty-five dollars ($25) for any one registered parcel, and the limit of the liability of the plaintiff to the senders of the registered letters, packages, and parcels involved herein did not exceed the sum of twenty-five dollars ($25) in any one case; and in no case involved herein did the plaintiff pay the sender or senders of any letter, package, or parcel, involved herein, any sum in excess of twenty-five dollars ($25). That the total amount of money paid by the plaintiff herein to the senders of the letters, packages, or parcels on the ninety-four (94) items set forth in the schedule filed herein, with a stipulation as to the value thereof, amounted to the sum of five hundred sixty and $10/100$ dollars ($560.10)."

The railroad company, in consideration of a payment to it of a stipulated sum, agreed as follows:

"In case the Post Office Department authorizes the transportation of mails over this line, or any part of it, the railway company agrees to accept and perform the service upon the conditions prescribed by law and the regulations of the department.        Horace G. Burt, President or General Manager."

George H. Smith (N. H. Loomis, of Omaha, Neb., and P. L. Williams and J. V. Lyle, both of Salt Lake City, Utah, on the brief), for plaintiff in error.

William W. Ray, U. S. Atty., of Salt Lake City, Utah (David S. Cook, Asst. U. S. Atty., of Ogden, Utah, on the brief), for the United States.

Before CARLAND, Circuit Judge, and MUNGER and YOU-MANS, District Judges.

CARLAND, Circuit Judge (after stating the facts as above). [1] The legal relation existing between the United States and the railroad company was contractual. The company agreed, in consideration of the payment of a stipulated sum for the service, that it would "accept and perform the service upon the conditions prescribed by law and the regulations of the department." This language in express terms made all applicable provisions of law and regulations a part of the contract. We think this relation of the parties renders inapplicable the contention that the railroad company, in performing the service in question, was engaged in the performance of a governmental function, and therefore, not liable for the negligence of its employés, providing it used ordinary care in their selection. Whatever may be the rule as to the liability of the company to the owners of mail being transported, it must be admitted, we think, that under its contract it owed the United States the duty to use ordinary care in transporting the mail over the route in question. This would certainly be so as to the mail equipment which was the property of the United States. The railroad company was not, it is true, a common carrier of the mail (A., T. & S. F. Railway Co. v. United States, 225 U. S. 640, 32 Sup. Ct. 702, 56 L. Ed. 1236), and is not liable to the United States as such, but it had possession of the property of the United States, speaking now of the equipment, and was being paid a consideration agreed upon for transporting the mail contained therein, and no good reason can be found for denying a liability for the negligent destruction of this equipment. When we come to determine the liability of the railroad company for the registered mail not owned by the government, a very different question is presented, and one in the solution of which many difficulties suggest themselves.

The United States is seeking to recover the value of the registered mail which they did not own and for the loss of which they are not liable exceeding the sum of $25 in any one case, so that it is difficult to see how they could be subrogated to the rights of the owners, whatever they may be. In the case of National Surety Co. v. United States, 129 Fed. 70, 63 C. C. A. 512, which was an action by the United States for the breach of a bond given by a letter carrier upon which the surety company was surety, the mail carrier received, for delivery, letters containing money and stole their contents. It was held by this court that the act of the carrier was a breach of the condition of the bond for which the United States could maintain an action, and that they were entitled to recover the money taken from the letters. Assuming that the condition of the bond was sufficient to cover the default of the carrier, the serious question was then presented as to the amount of damage which the government was entitled to recover. Judge Sanborn, delivering the opinion of this court, placed the right to recover the full amount of the money taken from the letters, upon the theory that the government was the bailee of the owner and entitled to recover against a wrongdoer the full value of the property taken by the carrier, and that this right was not dependent upon the liability of the government to

answer over to the owner. The opinion of Judge Sanborn was followed by the Circuit Court of Appeals for the Fourth Circuit in the case of U. S. v. American Surety Co., 163 Fed. 288, 89 C. C. A. 658. In United States v. Atlantic Coast Line R. R. Co., 215 Fed. 56, 131 C. C. A. 364, the United States Court of Appeals for the Fourth Circuit, in a case as to one of its branches parallel to the case at bar, used the following language:

"(2) It is well settled that the United States has a property right in the mails. Searight v. Stokes, 3 How. 151, 11 L. Ed. 537; In re Debs, 158 U. S. 564, 15 Sup. Ct. 900, 39 L. Ed. 1092. This being so, it may recover, from any person to whom it intrusted its mails, damages for their loss or delay due to the bailee's negligence. The direct damages for loss of mail would be the labor and time necessary in the effort to recover the various parcels and the disarrangement of the post office business. The government could also recover the value of the mail lost for the benefit of the owners of the mail, *provided the contract did not negative the idea of the liability extending that far.* It does not matter what we call the relation between the government and the railroad; the essential thing is that the railroad company assumed the obligation to use due care to have a safe track for the mail car to run on; and when it was negligent in that respect it became responsible for any damage to the government due either to its own negligence or that of its servants. The distinction urged between the negligence of the company itself and its servants on an issue of this sort is artificial and unsupported by any substantial reason. It may be true that, as between the owner of the mail matter seeking to fix the liability on the railroad for his lost property and the railroad itself, the railroad is a public agency; but as between the government and the railroad contracting to carry its mail, the railroad company is liable as a party to a private contract." (The italics are those of the court delivering the opinion.)

[2] We do not find it necessary, however, in the present case to determine just what the rights of the government are in respect to the registered mail in question, for we are clearly of the opinion that under the agreed facts presented in the record it exhausted the remedy provided by law for whatever damages may have resulted from the railroad wreck in question prior to the commencement of this suit.

As we have before stated, the railroad company agreed to accept and perform the service upon the conditions prescribed by law and the regulations of the department. Section 3962, R. S. U. S. (Comp. St. 1913, § 7450), reads as follows:

"The Postmaster General may make deductions from the pay of contractors, for failures to perform service according to contract, and impose fines upon them for other delinquencies. He may deduct the price of the trip in all cases where the trip is not performed; and not exceeding three times the price if the failure be occasioned by the fault of the contractor or carrier."

Postal Regulations, § 1335, provides that fines will be imposed under authority vested in the Postmaster General by section 3962, for each of the following delinquencies:

"Suffering the mail, or any part of it, to become wet, lost, injured, or destroyed, or conveying or keeping it in a place or manner that exposes it to depredation, loss, or injury."

The agreed statement of facts shows that on April 5, 1906, through the office of the Second Assistant Postmaster General of the United States, notice was sent to the railroad company stating that the sum of

$115.52 had been deducted from the pay of the railroad company for the quarter ending March 21, 1906, for the carriage of mail on route No. 157,001, for "failure to perform service, Train 2, Wilkins, Wyoming, to Council Bluffs, 817.64 miles, December 6, 1905." In the notice of this deduction, it was stated that it was made in pursuance of authority conferred by section 3962, R. S. U. S., above quoted. The facts also show that under date of July 1, 1910, a notice was received by the railroad company from the office of the Second Assistant Postmaster General, stating that there had been deducted from the pay of the railroad company for the month of June, 1910, for the carriage of mail on route No. 157,001, the sum of $3,000, "because of the loss of and damage to mail and equipment in the wreck of Cheyenne and Pocatello R. P. O. train No. 2 near Green River, Wyoming, December 7, 1905." The deduction of $3,000 was made for loss and damage to mail and equipment. There would be no reason for thinking otherwise, as the amount deducted was nearly ten times the value of the equipment, as stated in the agreed statement of facts. The wreck occurred December 7, 1905. Correspondence commenced in regard to this loss and damage September 4, 1907, and ended June 10, 1910. So that, at the time the deductions were made, it must be presumed the Post Office Department had full knowledge of the amount of the loss and acted with such knowledge in making the deductions. Whether the deductions were too large or too small, it was a matter entirely in the hands of the United States, and the conclusion reached ought to be binding upon them.

The United States Court of Claims has frequently construed section 3962, supra, and in Otis v. United States, 24 Ct. Cl. 72, it said:

"The service to be performed (in the carriage of the mails) is of such a character that a provision (such as that made by this section) is essential to the successful performance of the most important function incident to the executive branch of the government. If the Post Office Department were subjected to the ordinary remedy for a violated contract, the measure of protection would be incommensurate to the wrong inflicted, and the mail service might thereby be impaired in that efficiency required by public policy. * * * If this court were to so construe the law that these defendants could only recover for a violation of contracts according to the usual mode of assessing damages, the postal service might be stripped of that efficiency required by public necessity."

In Parker v. United States, 26 Ct. Cl. 357, the same court said:

"No man is obliged to be a mail contractor against his will; and the statute is operative against no man until by voluntarily entering into a contract or performing a mail transportation service he expressly or impliedly agrees to submit the differences which may arise to the arbitrament of the Postmaster General. The only effect of the statute is that it requires the Post Office Department to exact this agreement from all mail carriers, and that it takes such contracts to this extent out of the ordinary rules of law which regulate penalties and liquidated damages. * * * The vast area of the post office system, its complexity of routes, the remoteness and distance of its operations from the seat of the government, require that a summary method of dealing with its innumerable contractors and subcontractors shall exist, though its administration may often involve instances of individual injustice."

In United States v. Atlantic Coast Line R. R. Co., supra, the Court of Appeals of the Fourth Circuit said:

"The main difficulty is as to the measure of liability, for the railroad's negligent loss of mail; that is, whether it extends to the value of the property lost. The government is not responsible to the owner of mail lost in transportation. The postal regulations of the government under which its mail is carried, and which the railroad assumes as part of its contract, set out numerous duties and obligations imposed on railroads. There is a very strong presumption that, if the intention had been to impose upon railroad companies the very onerous obligation of being responsible for the value of all mail lost through its negligence, this obligation of such vast consequence to both parties would have been clearly and directly expressed in the regulations. The absence of such expression creates a strong implication that it was not the intention to impose such liability. The implication against liability in such case is strongly indicated in German, etc., Co. v. Home, etc., Co., 226 U. S. 220, 33 Sup. Ct. 32, 57 L. Ed. 195, 42 L. R. A. (N. S.) 1000; Atchison, T. & S. F. Ry. v. United States, 225 U. S. 640, 32 Sup. Ct. 702, 56 L. Ed. 1236. This view is further supported by the fact that where the government intends to impose such liability it is usually expressed in the written undertaking exacted from the party who undertook to carry the mail. National Surety Co. v. U. S., 129 Fed. 70, 63 C. C. A. 512; United States v. American Surety Co. (C. C.) 155 Fed. 941; United States v. American Surety Co. (C. C.) 161 Fed. 149; Id., 163 Fed. 288, 89 C. C. A. 658."

We are therefore of the opinion that, taking into consideration the facts as they appear in the record, the matters in difference between the United States and the railroad company, arising out of the wreck in question, have been settled and settled in the way provided by law. This view of the case ought not to be objected to by the United States, as it leaves with them a full and complete remedy at all times by the imposition of such penalties and deductions against mail contractors, as will fully reimburse the government for whatever loss it may have sustained.

The fact that no law has ever been passed by Congress and no regulation made by the Post Office Department, making those who carry the mail responsible for its loss, except as herein specified, and the fact that Congress by section 3962, supra, has authorized the Postmaster General to make deductions from the pay of mail contractors for failures to perform service according to contract and to impose fines upon them for other delinquencies, and the fact that the Postmaster General by regulation No. 1335, above quoted, has specified the acts for which penalties may be imposed and deductions made and the loss of the mail in question being within the terms of said regulation, and the fact that heretofore, during the existence of the government, no case like the one at bar has been instituted, except United States v. Atlantic Coast Line R. R. Co., supra, leads irresistibly to the conclusion that the remedy of the United States for the loss of mail through the default of contractors is through the imposition of fines and the making of deductions, as provided for in said section above quoted.

[3] It results that the judgment of the trial court must be reversed, and a new trial ordered. We feel that we have no authority to direct the proper judgment below, in view of the decision of the Supreme Court in Slocum v. New York Life Insurance Co., 228 U. S. 364, 33 Sup. Ct. 523, 57 L. Ed. 879, Ann. Cas. 1914D, 1029.